GIFFELS & VALLET, INC., v. EDW. C. LEVY COMPANY.

1. CONTRACTS—CONSTRUCTION—TIME OF PERFORMANCE.
Contract providing that plaintiff should furnish engineering services to defendant "as required and as you may direct" in the erection of a slag-handling plant, in the construction of which used steel from a bridge was to be adapted, imposed a duty upon defendant to inform the plaintiff of its specific needs from time to time and allow a sufficient interval to permit plaintiff to complete its service within a reasonable time, the contract being otherwise silent as to time of performance.

2. SAME—PERFORMANCE—TIME.
A reasonable time is to be presumed without reference to parol evidence when a written contract is silent as to time of performance.

3. SAME—PERFORMANCE—TIME—EVIDENCE.
Findings of trial judge in nonjury trial that defendant had given plaintiff information as to time for completion of construc-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3-5] 12 Am Jur, Contracts § 351.
[2] 12 Am Jur, Contracts § 299.
[6] 12 Am Jur, Contracts § 228.
[9] 30 Am Jur, Interest §§ 29, 49.
[9] Date of verdict or date of entry of judgment thereon as beginning of interest period on judgment. 1 ALR2d 479.

tion of slag-handling plant for which plaintiff was to perform engineering services "as required and as you may direct" and that plaintiff's delay, even if unreasonable, was attributable solely to plaintiff *held*, unsupported by defendant's testimony when taken in its entirety.

4. SAME—PERFORMANCE OF PERSONAL SERVICES—TIME—RESPONSIBILITY FOR DELAY.

A plaintiff who is engaged to perform personal services cannot be charged with responsibility for delay in performance of contract to perform them as required and as defendant may direct unless and until plaintiff was definitely directed to perform the services.

5. SAME—DELAY IN PERFORMANCE.

Neither party to a contract may recover damages from the other for delay in performance thereof, where both contribute to the delay, unless there is clear proof as to the apportionment of the delay and the expenses attributable to each party.

6. SAME—OMISSION OF PROVISIONS.

A court cannot make contracts for parties; supply material stipulations omitted from the contract, in the absence of fraud or mistake; nor perfect contracts which the parties themselves have left imperfect.

7. SAME — BURDEN OF PROOF — DELAY IN PERFORMANCE — VARYING TERMS OF WRITTEN CONTRACT.

Defendant for whom plaintiff was to furnish engineering services as required and as defendant directed had burden of proving plaintiff's sole responsibility for the delay in performance of contract for which defendant based recoupment and also the burden of establishing that plaintiff's project engineer had authority to vary the terms of written agreement.

8. SAME—ENGINEERING SERVICES—RECOUPMENT—DELAY—BURDEN OF PROOF.

Defendant owner of slag-handling plant who had contracted with plaintiff to furnish engineering services *held*, to have failed to sustain its burden of proving its right to recoupment because of delay in performance of services by plaintiff.

9. INTEREST—LIQUIDATED CLAIM—BURDEN OF PROOF—RECOUPMENT.

Interest from date of judgment is allowed on plaintiff's liquidated claim for services rendered under contract, where defendant failed to sustain its burden of proof as to plaintiff's liability on claimed recoupment.

Appeal from Wayne; Murphy (George B.), J. Submitted January 15, 1953. (Docket No. 7, Calendar No. 45,599.) Decided April 13, 1953. Rehearing denied June 22, 1953.

Assumpsit by Giffels & Vallet, Inc., a Michigan corporation, against Edw. C. Levy Company, a Michigan corporation, for sums due for engineering services. Recoupment by defendant against plaintiff for damages caused by delay. Judgment on both claim and recoupment. Plaintiff appeals. Defendant cross-appeals. Reversed as to judgment on recoupment for defendant. Judgment for plaintiff affirmed.

*Slyfield, Hartman, Reitz & Tait* (*Edwin J. Mercer,* of counsel), for plaintiff.

*Harry Cohen* (*Harry M. Nayer,* of counsel and *Clark, Klein, Brucker & Waples,* of counsel on application for rehearing), for defendant.

BUSHNELL, J. This is an appeal by plaintiff Giffels & Vallet, Inc. (hereinafter designated as Giffels), from a judgment entered on October 2, 1951, in the sum of $17,125.74, in favor of defendant Edw. C. Levy Company (hereinafter designated as Levy). Levy cross-appealed, claiming that a judgment should have been entered in its favor in the sum of $46,231.35. The action was tried by the circuit judge without a jury.

Levy operates 2 slag-crushing plants in the vicinity of the Dearborn, Michigan plant of the Ford Motor Company. Early in 1948 Levy anticipated the need of more facilities to handle a greater amount of slag because of Ford's erection of additional steel furnaces.

Edward C. Levy, president of the defendant company, visited a number of slag-handling plants

throughout the country, accumulated manufacturers' drawings, prints and written data in preparation for the enlargement of his company's plant. Some time prior to May 14, 1948, Roy I. Jones, chief engineer of the industrial engineering division of Giffels, solicited a contract for engineering services from Levy. Giffels is one of the largest engineering architectural firms in the country and has in its employ over 700 people. It operates 4 principal divisions, architectural, structural, electrical and mechanical.

The preliminary negotiations between Jones and Levy disclosed that Levy was so familiar with building and operating slag-crushing plants that he desired to handle his own preliminary layout work, act as architect and superintendent of construction, and only required from Giffels certain engineering services. Giffels was informed by Levy that used adaptable steel had been located in the Upper Peninsula of Michigan. The negotiations resulted in a written offer by Giffels dated May 14, 1948, which was accepted by Levy, the substance of which is as follows:

"This is to confirm the verbal proposal given you by our Mr. R. I. Jones in connection with your proposed slag-handling plant.

"We propose to furnish engineering services, as required and as you may direct, in connection with the construction of your proposed slag-handling plant for a fee of $4.25 per hour for all time spent by our men actively engaged on the work, plus travel and subsistence expense of our men if required to travel outside the Detroit area in connection with the work.

"No time will be charged for the services of Messrs. V. E. Vallet and R. F. Giffels nor for general stenographic, bookkeeping, or messenger services. Time will be charged for typing of reports and specifications and for the handling of blue prints and

reproductions.   The normal requirements of blue prints will be furnished without charge.   Other reproductions will be furnished at actual cost to us.

"We understand that you verbally authorized Mr. Jones to proceed with the work.   If the above confirms your understanding of this proposal, we will be pleased to have you sign the attached copy of this letter and return for our records."

Levy testified that before the written agreement was made, he informed Jones that it was necessary that the new slag-plant construction be completed in time to be able to process slag from the new Ford furnaces, and that he gave Jones a date upon which Ford expected to have their new furnaces in operation.   This exact date, which does not appear in the record, is of importance because Levy, under its arrangement with Ford, was obliged to daily remove accumulated slag from the Ford furnaces.   Jones denied any such conversation with Levy prior to May 14th.   The agreement itself is silent as to the time of performance.   When the written proposal was signed by Levy, he showed Giffels' project engineer, Carroll F. Morrison, what preliminary work had been done in connection with the project and turned over to him a general layout of the proposed plant, together with preliminary drawings and other available information.   Changes in this data were made from time to time as Giffels proceeded with the engineering work.

The first charge by Giffels, which was for 131 hours of engineering service, was rendered to Levy on June 4, 1948.   The first payment by Levy was made on July 30, 1948, in the sum of $3,000.   Invoices covering services were rendered weekly, and when the last sizeable payment of $1,541.94 was made by Levy on December 15, 1948, invoices had been rendered totaling $45,297.93.   Two smaller payments were made by Levy in January, 1949, bringing the total paid

by it to $16,192.32, and leaving a balance then due Giffels of $29,105.61.

As a special defense, Levy claimed that he had paid Giffels $16,000, which payment was accepted as an accord and satisfaction of Giffels' claim. This was denied by Giffels with the assertion that no objections had ever been made to invoices rendered. Levy, however, testified that he made repeated protests against the bills rendered and claimed that one of Giffels' engineers, Richard H. Steketee, told him in August of 1948 that Morrison said the job would cost only $16,000.

The trial judge declined to hold that Giffels was entitled to recover under its plea of an account stated, but allowed recovery under the assumpsit count. The trial judge found that Giffels rendered hourly services to the Levy company as invoiced and, after giving credit for the amounts paid, concluded there was a balance due Giffels in the sum of $29,-105.61.

Levy filed a claim of set-off and recoupment as follows:

"To extra cost in stock-piling slag and transferring same into slag-handling plant due to plaintiff's delays as set forth in the foregoing pleadings and its breach of agreement, 76,000 tons at 55 cents per ton from November 27, 1948, to January 5, 1949 .................. $41,800.00

"To extra cost of labor and maintaining construction crew due to plaintiff's delays and breach of agreement as hereinbefore set forth from November 15, 1948, to January 5, 1949 ............. $12,879.10

total .......... $54,679.10

"Interest to date of judgment."

The trial judge found that Levy had failed to produce sufficient proof in support of its claim of recoupment in certain respects, but that there was proof that Levy had been damaged because of

"a delay on the part of the plaintiff in furnishing detailed drawings to the defendant expeditiously and in accordance with defendant's requirements to meet the opening of the new Ford blast furnaces which were completed November 23, 1948. The monetary damage to the defendant from this delay has been clearly put on the record by the testimony of defendant's witness, Mr. Harris.

"As a result of this delay the defendant was obligated to 'double-handle' the slag from the period that Ford commenced operating his blast furnaces, November 23, 1948, to January 5, 1949, the date of the opening of the defendant's new slag plant. Eighty-four thousand fifty-seven tons of slag were so handled at a cost to defendant of 55 cents per ton, or an extra handling charge of $46,231.35."

These findings resulted in a difference in defendant's favor of $17,125.74 between plaintiff's claim and defendant's.

The meaning of the words in the agreement, "as required and as you may direct," is of decisive importance. Levy insists that the writing does not express the whole agreement between the parties and that the words "as required and as you may direct" mean that Giffels was to furnish Levy with sufficient drawings "in such amounts and at such times that same were required and requested by the defendant, so that the construction of the slag-handling plant would be completed simultaneously with the completion of the furnace of the Ford Motor Company, the defendant's customer from whom slag was to be obtained by the defendant."

Thus the query: (1) The meaning of the quoted phrase; and (2) the sufficiency of the proofs offered by Levy to sustain its claim of damages.

In support of its interpretation of the words, "as required and as you may direct," Levy cites certain dictionary definitions of the word "as", which it insists must be construed to mean "when" and argues that only by thus treating the word "as" to read "when" can we effectuate the real intention of the parties to meet defendant's requirements of the time for completion.

This argument would be more appealing if it were not for the fact that the parties qualified the words "as required" by adding the words "and as you may direct". Without these added words the agreement would have been breached if Giffels had not furnished engineering service "as required" for the completion of the construction job at either an expressed or implied time. The addition of the words "as you may direct" imposed a duty upon Levy to inform Giffels of its specific needs from time to time and allow a sufficient interval to permit Giffels to complete such engineering service within a reasonable time.

"When a written contract is silent as to time of performance, a reasonable time is to be presumed without reference to parol evidence." *Brady* v. *Central Excavators, Inc.*, 316 Mich 594, 607, and authorities therein cited.

The slag-plant construction involved the use of secondhand steel which had been fabricated for bridge construction in the Upper Peninsula. Therefore, the engineering details would of necessity require adjustment from time to time and depend upon the prompt furnishing of information regarding the used steel, its lengths, position of rivet holes, et cetera. The record is silent as to such information;

nor can we find in it any proof of the time at which Levy made its specific requirements known to Giffels, notwithstanding the conclusion of the trial judge that such information as to the time for completion of the job was furnished.

The trial judge held that the agreement, standing by itself, had no substance and he, therefore, admitted parol evidence to clarify what he characterized as ambiguous language in the agreement. We do not need to determine whether the admission of parol evidence was improper, as insisted by plaintiff, because, after attributing every possible weight to such evidence, we reach the conclusion that defendant's testimony in its entirety is insufficient to support the findings of the trial judge that the delay, even if unreasonable, is attributable solely to Giffels.

Levy admitted on cross-examination that he had never met Morrison until he brought the written proposal to the Levy plant on May 14th. Defendant claims in its answer that Jones was notified of the required time of completion simultaneously with the execution of the agreement and prior and after such execution. Jones was not present during Morrison's conversation at the Levy plant, and, therefore, could not have been notified simultaneously. Any notification to Jones after the execution of the agreement would be immaterial. Giffels cannot be charged with responsibility for delay in producing engineering drawings unless and until it had been definitely directed in this particular.

The written agreement states that it was to confirm the verbal proposal given by Jones. In the case of *Brady* v. *Central Excavators, Inc., supra,* 600, it is stated: "The purchase order is issued in conformance of the terms of your proposal." In that case parol evidence was admitted to explain the entire agreement. However, in the instant case the proposal related solely to the furnishing of engineering

services and thus eliminated any suggestion or intimation of any control by Giffels over preliminary layouts, plans and specifications, the ordering of material or the supervision of the construction.

It is also doubtful whether the delay, even if unreasonable, is attributable to Giffels. The new Ford furnaces first produced slag on November 23, 1948. The new Levy slag-crushing plant was not ready for operation until January 5, 1949. The last substantial charge for 239 hours at $4.25 per hour, totaling $1,015.75, was billed by Giffels on November 4, 1948. This invoice covered engineering services performed from October 10, 1948 to October 23, 1948. Those services were, therefore, completed 30 days before the new Ford furnaces blew in on November 22, 1948. There is no explanation in the record of what occurred during this interval, save the testimony of Levy's construction superintendent, Samuel B. McKinney, who was employed on an hourly basis to supervise the erection of the building. He said that at various times he had to slow down his crew because of the absence of drawings, but he could not fix any definite dates when slow-ups occurred. McKinney went on the job about August 25th, and when he left on December 15th the steel construction was about 95% complete. He stated that if detailed drawings had been furnished on time the job would have been completed not later than November 15th.

Where both contracting parties contribute to a delay, neither can recover damages unless there is clear proof as to the apportionment of the delay and the expenses attributable to each party. *Coath & Goss, Inc.*, v. *United States,* 101 Ct Cl 702, 714, 715. *Edwards* v. *Hall,* 293 Pa 97, 101 (141 A 638), is cited by Levy as authority in support of its claim of Giffels' responsibility for the delay. The rule in that case is inapplicable here, however, because the written contract between Edwards and Hall required that

completed plans be in the owner's hands by a certain date. In the instant case no such requirement appears but is only read into the contract by parol testimony and by the application of the presumption of reasonable time. See, also, 6 CJS, p 316.

"The court may not supply material stipulations omitted from a contract in the absence of fraud or mistake. It cannot perfect contracts which the parties themselves have left imperfect. It cannot make contracts for the parties." *Gauss* v. *First Wayne National Bank,* 264 Mich 233, 237.

The burden of proof of Giffels' sole responsibility for the delay rested upon Levy, as did the burden of establishing Morrison's authority to vary the terms of the written agreement. See *Goodspeed* v. *McNaughton, Greenwalt & Co.,* 288 Mich 1; *Richards* v. *Lowrie & Webb Lumber Co.,* 317 Mich 42.

Levy did not sustain the burden of proof as to its recoupment and that portion of the findings of the trial judge must be vacated and set aside. This is not an instance where reversal is granted in a case tried by the court without a jury on the ground that the proofs clearly preponderate in the opposite direction but, rather, one in which the burden of proof was not sustained.

The judgment is affirmed as to Giffels and vacated as to Levy. The cause is remanded for the entry of a corrected judgment in the sum of $29,105.61 in favor of Giffels, with interest thereon from October 2, 1951. Costs in both courts to plaintiff.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.