UNIVERSAL LEASEWAY SYSTEM, INC., *v.*
HERRUD & COMPANY.

**1. CONTRACTS—ALTERATIONS—MEETING OF THE MINDS.**

A basic agreement of the parties could not be changed by either party without the consent of the other, a meeting of the minds being required not only to make a contract but, also, to rescind or modify it after it has been made.

**2. SAME—CONSTRUCTION OF PURCHASE-LEASE AGREEMENT AS TO TRUCK FLEET—INITIAL RETAIL SELLING PRICE—TIRES.**

Construction of contract, providing that defendant sell a fleet of trucks to plaintiff, agree to lease them from plaintiff, and, upon termination of the agreement by either party, buy the trucks back at the initial retail selling price, less depreciation, whereby the *initial retail selling price* was determined to be the date the vehicle was ready for service, that tires added thereafter would be the obligation of the plaintiff under provision requiring it to supply all tires, but tires added to new vehicles before putting them in service would be a part of the *initial retail selling price held*, proper.

**3. SAME — CONSTRUCTION — INITIAL RETAIL SELLING PRICE — TRUCK FLEET.**

*Initial retail selling price,* as term was used in contract relative to sale, lease, and repurchase of fleet of trucks, *held*, to have been properly construed as the regular retail selling price to a fleet owner, and not the regular retail selling price to the purchaser of 1 vehicle.

**4. SAME—BREACH OF CONTRACT—DAMAGES.**

A party who has lost nothing by a breach of contract is not entitled to damages of a substantial character.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 427.
[2, 3] 12 Am Jur, Contracts § 226.
[4, 5] 12 Am Jur, Contracts § 388.
[6] 14 Am Jur, Costs § 91.

5. Same—Truck Fleet—Damages—Evidence.
    Trial court's allowance of $3,000.29 on counterclaim for damages due to plaintiff's failure to properly maintain fleet of trucks under contract *held*, improper, where there is no evidence that defendant was so damaged.

6. Costs—Reversal of Allowance on Counterclaim—Failure of Either Party to Prevail in Full.
    No costs are allowed on appeal in nonjury action under contract for purchase, lease, and repurchase of truck fleet, where trial court's allowance on defendant's counterclaim for plaintiff's alleged failure to properly maintain the trucks is reversed on appeal, since neither party has prevailed in full.   ·   ·   .·

Appeal from Kent; Searl (Fred N.), J. Submitted January 12, 1962. (Docket No. 87, Calendar No. 48,760.) Decided May 18, 1962.

Assumpsit by Universal Leaseway System, Inc., a Michigan corporation, against Herrud and Company, a Michigan corporation, on truck-leasing agreement for sums claimed due on purchase price of trucks following termination of leasing arrangement. Defendant claimed refund of overpayment and counterclaimed for damages due because of improper maintenance of trucks. Judgment for defendant. Plaintiff appeals. Remanded for entry of judgment for defendant in reduced amount.

*Schmidt, Smith, Howlett & Halliday (Laurence D. Smith,* of counsel), for plaintiff. ·

*Warner, Norcross & Judd (Harold S. Sawyer* and *Joseph B. White,* of counsel), for defendant.

Kelly, J. Appellant is the successor to Reo Truck Leasing, Inc., and is in the business of leasing truck fleets to various businesses and industries. ·  ·   ¨

Defendant is in the meat processing business in Grand Rapids and on January 5, 1954, sold its trucks to plaintiff for an agreed value of $40,600 and, at the

same time, entered into an agreement to lease the trucks from plaintiff. The lease agreement provided for termination by either party; that upon termination the defendant would purchase the trucks then on hand from plaintiff for the initial retail selling price, less depreciation.

Schedules indicating the initial selling price, residual value, and depreciation were attached to the lease in blank and the lease provided that the schedules were to be filled in as the vehicles were readied for service. The schedules were subsequently completed by plaintiff and sent to defendant at various times between October 4, 1954, and September 29, 1955.

On December 12, 1955, defendant notified plaintiff of its intent to terminate the lease. During this period changes in the fleet of trucks were made, with some trucks taken out of service and new ones added. The lease was finally terminated in April, 1956.

A dispute arose as to the buy-back price and that is the basis of this suit. Plaintiff contends the buy-back price should be $56,747.81, while defendant initially contended the buy-back price should be $42,848.56, but later computations by its accountants established a buy-back price of $38,876.73.

By agreement, defendant paid plaintiff $50,000; the agreement providing that if a judgment was obtained in court in excess of $50,000 defendant would pay the difference; if a judgment less than this amount was obtained plaintiff would reimburse defendant.

The crux of the dispute involves tires put on the trucks by plaintiff. There is also an item involving the price to be established for the newly-purchased trucks. When plaintiff took over the trucks initially, it placed premium tires, guaranteed for approximately 60,000 miles, on the trucks in place of the old

tires, and when a new truck was purchased premium tires were placed on the new truck.

Plaintiff contends the manufacturer's list price of these tires should be included in determining the initial retail selling price; that once the schedules were completed and received by defendant they became part of the contract and if they varied from the basic contract, they must be deemed modifications thereof. Defendant counters by arguing that plaintiff was authorized to fill in the blanks only in accordance with the basic contract and any variation would not be binding upon it.

Defendant acknowledged receipt of the schedules, but contended it was unaware of any variation at that time since the initial retail selling price did not indicate what was included therein.

Proofs at the trial consisted principally of the basic contract, some correspondence, and the various computations of the parties.

After a hearing, the court, without a jury, set the buy-back price at $43,695.17 and awarded defendant $3,000.29 damages for the condition of the trucks. The net figure was $40,694.88 and, since defendant had paid $50,000, judgment was entered in defendant's favor for $9,305.12.

In regard to the lease, the court stated:

"The lease is a printed document prepared by Reo (plaintiff) and, apparently, used by it in its contract with others in the same general position as Herrud. It would seem that in fixing as the basis of the buy-back price the 'initial retail selling price', Reo or the attorney preparing the same could have defined that term in language which would not have resulted in this litigation. It did not do so. Both the businessmen who entered into the agreement and their competent and experienced counsel violently disagree as to the meaning of the contract."

In determining what the parties intended to be included in the "initial retail selling price" we turn to the lease agreement. The pertinent portions provide that:

1. Defendant hired the vehicles for a term beginning on the date each such vehicle was ready for service;

2. Defendant was to accept delivery upon notification that the vehicle was ready for service;

3. Plaintiff was to keep the vehicles in good working condition and furnish all tires;

4. When a vehicle was ready for service plaintiff was authorized to complete the schedule by inserting therein the initial retail selling price, the residual value, and the monthly depreciation;

5. New vehicles were to be substituted for old ones as needed by defendant and the initial retail selling price of such new vehicles was defined to be "the regular current retail selling price of the new vehicle, delivered to lessor, plus the cost of all additional equipment, enlargements and alterations required by lessee";

6. Upon termination of the agreement, defendant was to repurchase the vehicles for a lump sum equal to the aggregate initial retail selling price of the vehicles, less depreciation, as stated in the schedule.

The trial court interpreted the agreement to mean that "initial retail selling price" was to be determined as of the date the vehicle was ready for service and tires added thereafter would be the obligation of the plaintiff under the provision that it was to supply all tires and, hence, not includable in the initial retail selling price; that the vehicles originally sold to plaintiff show a delivery date of January 25, 1954, and were, therefore, ready for service as of that date; that the substitution of tires on these vehicles was not made until a later date, to-wit, January 29, 1954, to March 12, 1954, and

consequently were plaintiff's obligation under the provision requiring that it furnish all tires and were not includable in computing the initial retail selling price of these vehicles; that as to the newly-purchased vehicles however, the tires were substituted at the time of purchase by plaintiff and before the vehicle was ready for service and, therefore, includable in computing the initial retail selling price under the provisions that as to newly-purchased vehicles the initial retail selling price was to be the regular current retail selling price of the vehicle, plus cost of all additional equipment, enlargements and alterations.

Defendant's witnesses testified that they had never been told, nor had they discussed with plaintiff, what was to be included in the initial retail selling price, although there is no question defendant was aware premium tires were being placed on the vehicles. The appendix contains the testimony of only 1 witness for plaintiff, namely, that of a handwriting expert, that certain initials of defendant's representatives appeared on the schedule after the initial retail selling price had been filled in.

The basic agreement between the parties was set forth in the lease and this agreement could not be changed by either party without the consent of the other. A meeting of the minds is required not only to make a contract but, also, to rescind or modify it after it has been made. We agree with the court's construction of the lease and the decision he made in regard to the question of tires.

A question was presented to the court in determining the amount to be used in computing initial retail selling price of the new vehicles and the tires placed thereon. Answering this question, the court held that the proper figure was the actual cost to plaintiff and not the regular retail selling price to

the purchaser of 1 vehicle. We quote with approval the following statement of the lower court:

"In determining the 'regular current retail selling price of a new vehicle' which is the contract definition of the term initial retail selling price, was Reo entitled to use the manufacturer's list price of the vehicle and the tires? I do not think so.

"Reo was a fleet owner. Herrud had been a fleet owner. When they used the term 'regular current retail selling price of the new vehicle delivered to the lessor', they meant the regular retail selling price to a fleet owner; they did not mean the regular retail selling price to the purchaser of 1 vehicle and they did not mean the manufacturer's list or suggested price.

"If Reo wished to be able to require lessee to repurchase the vehicle on the basis of such manufacturer's list price, and thus to make a profit at Herrud's expense, it should have so provided in this carefully drawn and printed contract. It did not do so."

Plaintiff also appeals from the court's decision allowing defendant $3,000.29 on a counterclaim for plaintiff's failure to properly maintain the vehicles.

After defendant terminated the truck lease it sold its entire fleet to Star Transfer Company and made no claim to either plaintiff or to Star that the trucks were not in normal operating condition.

Defendant states that "plaintiff is not entitled to benefit by reason of the fact that the damages which it had caused may have been rectified by a third party" and cites cases* to sustain such contention. We do not agree with defendant or the court in regard to the amount of $3,000.29 which was allowed, because there was a total absence of proof that de-

---

* *Brewster* v. *Silverstein*, 133 NYS 473; *Hinrichs* v. *City Bank Farmers Trust Co.*, 47 NYS2d 75; *Gusikoff* v. *Republic Storage Co., Inc.*, 241 App Div 889 (272 NYS 77); *Wells* v. *Thomas W. Garland, Inc.* (Mo), 39 SW2d 409.

fendant was damaged by plaintiff's failure to return the trucks in normal operating condition.

In *Ward's Central & Pacific Lake Company* v. *Elkins*, 34 Mich 439, 442 (22 Am Rep 544), we stated:

"The rule of damages should have been as previously indicated, and should in no case exceed the damages actually incurred. A party who has lost nothing by a breach of contract is not entitled to damages of a substantial character."

Remanded, with instructions to the lower court to deduct from the judgment the $3,000.29 allowed as defendant's damages on its counterclaim and to enter a new judgment for defendant. No costs, neither party having fully prevailed.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.