**HY KING ASSOCIATES, INC.,
a Michigan corporation,
Plaintiff,**

v.

**VERSATECH MANUFACTURING
INDUSTRIES, INC., a Canadian
corporation, Defendant.**

**No. 90–73877.**

United States District Court,
E.D. Michigan, S.D.

July 8, 1993.

Francis King, Grosse Pointe Woods, MI, for plaintiff.

Jeffrey Arnstein, Farmington Hills, MI, for defendant.

## COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

GADOLA, District Judge.

A bench trial was conducted in this matter commencing May 4, 1993 and concluding May 13, 1993.

### BACKGROUND OF CONTROVERSY

Defendant, Versatech Manufacturing Industries, Inc., is a corporation organized under the laws of Canada. This corporation was formerly known as Lee Gasket Industries, Inc., the corporate name having been changed to the present name in February 1991, and the corporation has done business at various times under the assumed names of Foamade Gasket Industries and Versatech Industries.

Plaintiff, Hy King Associates, Inc., is a corporation formed June 1, 1979 under the laws of the State of Michigan. The plaintiff corporation was formed by C. Hyatt King, hereinafter referred to as "King", who initially held sixty per cent of the outstanding shares of stock in the corporation, and who served as its chief executive officer from the time of incorporation until his retirement on July 1, 1988.

Jack S. Lee, hereinafter referred to as "Lee", held the position of chief executive officer of the defendant corporation at all times hereinafter mentioned.

Defendant corporation is a manufacturer of foam and gasket products for sale to the automotive industry. Mr. King was, until his retirement on July 1, 1988, a manufacturer's representative.

On April 1, 1974 King, as an individual, entered into a contract with defendant corporation by the terms of which King agreed to be the exclusive sales representative of defendant in the sale of all of defendant's gasket products to automotive and truck customers in the states of Michigan, Ohio and New York. The contract was signed by Mr. King individually, and by Lee in his capacity as president of defendant corporation. (Plaintiff's Exhibit 1).

Under this contract, King, as an independent contractor, was to receive commissions of five (5%) per cent of total net billings invoiced by defendant to all its customers on an annual basis on the first five hundred thousand dollars of sales, three (3%) per cent on the second five hundred thousand dollars and two (2%) per cent on such net billings in excess of one million dollars of sales, whether or not King obtained the orders on which the billings were based (with certain exceptions which are irrelevant to this litigation).

The contract provided for termination by either party upon ninety days prior written notice. Further, it was provided in the contract that in the event of termination of the contract by defendant, the defendant would be required to pay Mr. King his regular commissions for eighteen months following the effective date of termination, as if the agreement had not been terminated, except that in the event of the death of King, three months commissions were to be paid.

The contract further provided that King "shall not assign or transfer this agreement or any rights or obligations hereunder except with the prior written consent of Principal (i.e., defendant corporation). Any attempt at assignment without such written consent shall be deemed null and void and of no effect."

The contract referred to Mr. King as an "independent contractor".

The clauses of the contract, as aforesaid, addressing the matters of termination of the contract by defendant and commissions due thereafter to King, and restricting assignment or transfer of the contract, constitute the crux of the controversy between the parties.

Mr. King, prior to his formation of plaintiff corporation on June 1, 1979 conducted his manufacturer's representative business under the assumed name of "Hy King Associates". In 1978 John Cozzi (hereinafter referred to as "Cozzi") became associated with Mr. King in King's manufacturer's representative business and they worked together in that business until Mr. King's retirement. Cozzi was introduced to Lee and to other officials of defendant corporation upon becoming associated with King. Cozzi was not, however, formally added as a party to the contract of April 1, 1974.

As previously stated, King proceeded to incorporate his business as "Hy King Associates, Inc." on June 1, 1979, with himself as president and with sixty (60%) per cent of the shares of stock being issued to himself and forty (40%) per cent of such shares being issued to Cozzi. That corporation is, of course, the plaintiff in this litigation.

On January 24, 1980 defendant, in a letter directed to Mr. King individually, and signed by Lee as president of defendant corporation, announced termination of the contract of April 1, 1974. (Plaintiff's Exhibit 3)

On February 7, 1980, Mr. King, as an individual, dispatched a letter to Lee advising defendant corporation that King would be entitled to ninety days notice of termination and to continued commissions for eighteen months following the effective date of termination (Plaintiff's Exhibit 4). This letter was on the stationery of King's assumed name business, as were all his various written communications to defendant corporation from the inception of the contract until King's retirement on July 1, 1988.

On February 12, 1980 defendant notified King, by letter, that the termination of

King's contract was effective as of February 1, 1980 (Plaintiff's Exhibit 5).

On February 28, 1980 Mr. King advised defendant corporation, by letter, again on the stationery of his assumed name business, that the contract could only be terminated on ninety days prior written notice, and that therefore the effective date of termination would be May 1, 1980, with commissions payable for eighteen months thereafter, being due therefore to November 1, 1981. (Plaintiff's Exhibit 6)

On May 16, 1980, defendant, by Lee as its president, notified Mr. King that it had reconsidered and was reinstating the contract, with the commission to be four (4%) per cent on net sales effective August 1, 1980 (Plaintiff's Exhibit 7).

On December 13, 1982 the contract was again amended, in that the commission rate was increased from four (4%) per cent to five (5%) per cent effective January 3, 1983, as evidenced by a memorandum from Lee to King individually, and commencing with the salutation "Dear Hy". (Plaintiff's Exhibit 8)

On June 18, 1984, defendant corporation, by Mr. Lee, proposed that Mr. King also represent it in sales of polyethylene foam (Plaintiff's Exhibit 9).

On June 27, 1984 King responded personally and advised defendant of his decision to represent defendant's foam operations in Michigan, as well as its gasket business (Plaintiff's Exhibit 10).

On July 1, 1988 King retired from his activities as a sales representative and removed himself to his retirement residence in Arizona. He transferred his stock, being sixty (60%) per cent of the outstanding shares in plaintiff's corporation, to plaintiff corporation for a consideration of one hundred dollars (Plaintiff's Exhibit 113) and entered into a "Covenant Not to Compete" with the plaintiff corporation, which provided that for eighty-four successive months commencing in August of 1988, plaintiff corporation was to pay to him ten (10%) per cent of all commissions received by plaintiff, including commissions paid to plaintiff by defendant (Plaintiff's Exhibit 114). Thus, Mr. King has an interest in the outcome of this litigation in which plaintiff corporation seeks recovery from defendant corporation of commissions allegedly due under the contract of April 1, 1974 between Mr. King and defendant.

With the retirement of King and his transfer of shares on July 1, 1988, Mr. Cozzi then became the sole shareholder in plaintiff corporation.

After the July 1, 1988 retirement of King, plaintiff corporation, with Cozzi now the owner of all outstanding shares, acted as sales representative for defendant for a brief period. It is the contention of plaintiff that it so acted as an assignee of King's rights under the contract of April 1, 1974. Lee maintains, on the other hand, that with the retirement of Mr. King the contract of April 1, 1974 was terminated, the contract having been with King as an individual and being a personal service contract, and there having been no valid assignment of the contract by King to the corporation which he formed on June 1, 1979, being the plaintiff herein. It is the contention of defendant that, under the contract language, there was no valid assignment or transfer of King's contract to plaintiff corporation since the contract specifically provided that any such assignment could only be effectuated with the prior written consent of the defendant, and that any attempted assignment without defendant's prior written consent was to be deemed "null and void and of no effect." It is agreed by all parties that there was no such prior written consent to any assignment of the contract by King to plaintiff corporation.

Thus, defendant contends that it continued to deal with King as an individual under the provisions of the contract of April 1, 1974, as subsequently amended from time to time, and that the contract with King was terminated by reason of King's retirement to Arizona as of July 1, 1988. Plaintiff maintains, to the contrary, that defendant did effectively consent to and recognize the assignment of the contract to the corporation organized by King, verbally and by its actions in dealing with plaintiff corporation as its sales representative from and after June 1, 1979 and plaintiff claims, therefore, that it was entitled to a ninety day notice of termination of the contract, and to receive commissions for a

period of eighteen months from the effective date of termination of the contract. Thus it is defendant's contention that the contract was terminated on July 1, 1988 by King's retirement, and that King's attempted or purported assignment of the contract to plaintiff corporation at the time of his formation of that corporation on June 1, 1979 was null and void, he having failed to obtain the prior written consent of defendant thereto. If the contract was terminated by King's July 1, 1988 retirement, with no prior valid assignment thereof to plaintiff corporation on June 1, 1979, then plaintiff corporation is not entitled to recover herein. If, on the other hand, the contract was effectively assigned by King to plaintiff corporation on June 1, 1979 with defendant's knowledge and consent, then plaintiff would be entitled to commissions for eighteen months, after defendant terminated the services of plaintiff corporation as its sales representative, in accordance with the contract terms.

It is the position of defendant that after the contract was terminated by King's July 1, 1988 retirement, defendant then utilized the services of plaintiff corporation and Cozzi, as its owner, as defendant's sales representative, but not under the terms of the contract of April 1, 1974, which was with King individually, and was a personal service contract. In other words, defendant maintains that it dealt with King individually, as its sales agent from April 1, 1974 until he voluntarily retired on July 1, 1988, and that it then utilized the services of plaintiff corporation and Cozzi for a short period thereafter, but without any formal written agreement.

A determination, therefore, of the question of whether the contract was validly assigned by King to plaintiff corporation as of June 1, 1979, with the consent of defendant, is determinative of the merits of plaintiff's claim herein.

It should be noted that there is no claim or representation by plaintiff or plaintiff's counsel herein that there was a valid assignment of the contract by King to plaintiff corporation at the time of King's retirement from his business on July 1, 1988 and his transfer of his stock on that date which left Cozzi as sole shareholder in plaintiff corporation. Rather,

it is the position of plaintiff, as stipulated on the record in open court during trial and as set forth in plaintiff's pretrial statement, as incorporated in the pretrial order herein, that the assignment of the contract of April 1, 1974 to plaintiff corporation, with the purported prior knowledge, approval and consent of defendant thereto, was accomplished on June 1, 1979, when King incorporated his manufacturer's representative business as plaintiff corporation, with himself holding a sixty (60%) per cent equity therein and with Cozzi owning the remaining forty (40%) per cent of outstanding shares. Plaintiff has disavowed any claim or contention that such an assignment with the knowledge, approval and consent of defendant took place on July 1, 1988 when King retired and Cozzi became the sole owner of all outstanding shares in plaintiff corporation. It has been stipulated that the issue herein is whether there was an effective assignment of the contract at the time of formation of plaintiff corporation on June 1, 1979, the determination of which will resolve the question of whether plaintiff corporation is entitled to recover commissions for a period of eighteen months after termination by defendant of plaintiff corporation's services as its sales representative, under the aforesaid provisions of the contract between defendant and Mr. King as defendant's sales representative, executed April 1, 1974, and to which contract plaintiff corporation was not then a party, having only been subsequently organized and created by King on June 1, 1979.

After King's retirement on July 1, 1988, defendant did utilize the sales representative services of plaintiff corporation for a short time thereafter. It is the position of plaintiff that defendant did so on the basis that plaintiff was the assignee of King's contract, effective as of the date of the formation of plaintiff corporation on June 1, 1979. Defendant, on the other hand, maintains that it merely utilized the services of plaintiff corporation for a short time after King's retirement on an informal basis, the contract with King having expired upon his retirement, and that contract having been a personal service contract.

On September 1, 1989 defendant sent a letter to plaintiff corporation advising of its intention to terminate plaintiff corporation's services, "probably by October 15" (Plaintiff's Exhibit 12). On September 7, 1989 plaintiff responded by letter stating plaintiff's position that the agreement between King and defendant inured to the benefit of plaintiff, and that plaintiff was therefore entitled to ninety days written advance notice of termination, and continuation of commissions for eighteen months thereafter. (Plaintiff's Exhibit 13) Plaintiff therefore stated that, based on an assumed notice date of September 1, 1989 per defendant's letter of that date, the "termination date would be December 1, 1989" and "commissions will continue to be paid for eighteen months beyond the termination date, which will be through May 31, 1991."

On September 19, 1989, plaintiff corporation mailed to defendant a copy of the agreement of April 1, 1974 between King and defendant. (Plaintiff's Exhibit 14)

On November 30, 1989 defendant forwarded to plaintiff corporation a letter advising that "—— we are terminating our informal arrangement with you effective immediately. There will be no further sales commissions payable effective December 31, 1989." (Plaintiff's Exhibit 17)

Thus, the issue was joined.

It is the position of plaintiff corporation that when King caused his sales representative agency business, which he then operated under the assumed name of "Hy King Associates", to become incorporated on June 1, 1979, he assigned his contract with defendant of April 1, 1974 to plaintiff corporation, and that the incorporation of his business and his assignment of the contract to the corporation was with the prior knowledge and consent of defendant, and that therefore when defendant terminated the services of Cozzi and plaintiff corporation on November 30, 1989, plaintiff corporation became entitled to the provisions of that contract, including a three month notice of termination and an eighteen month continuation of payment of commissions after termination of the services of plaintiff corporation.

To the contrary, defendant maintains that from the date of its contract with King (April 1, 1974) until King's retirement (July 1, 1988) King as an individual was defendant's sales representative; that at no time did defendant ever consent to or approve any assignment of King's contract to a corporation and that the contractual relationship between defendant and King, which relationship was for the personal services of King, came to an end on July 1, 1988 with King's retirement; that defendant thereafter did business with plaintiff corporation and Mr. Cozzi as defendant's sales representative for a time, but not under the terms of the contract to which, defendant maintains, plaintiff was never a party; that accordingly, when defendant terminated the services of plaintiff corporation by its communication of November 30, 1989, which notice stated that commissions would be terminated as of December 31, 1989 (Plaintiff's Exhibit 17), plaintiff's right to sales commissions ended thereby on December 31, 1989.

King testified that following the execution of the contract of April 1, 1974 he operated his business under the assumed name of "Hy King Associates", that in 1978 Mr. Cozzi joined him in his sales representative business on a trial basis and that Cozzi was introduced by King to Jack Lee, president of defendant, in 1978 and that Lee expressed no dissatisfaction with the fact that Cozzi was coming into King's business. King further testified that in May of 1979 he decided to incorporate his business, with Cozzi to be a forty (40%) per cent shareholder, and that he informed Lee of his intentions in that regard and that Lee was entirely agreeable to the incorporation. In fact, so King testified, Lee expressed enthusiasm regarding his plans to incorporate his business. King conceded, however, that he did not ever specifically discuss with Lee whether the incorporation would affect or alter in any way the relationship between himself and defendant under their contract, and did not request that Lee, as president of defendant, consent to the incorporation or to any assignment of the contract to the corporation. King said that he nevertheless considered, from his conversations with Lee, that there was a transfer and assignment of his contractual rights and

obligations from himself to his corporation, with the consent of defendant.

Mr. Cozzi testified that after he became associated with Mr. King in King's sales representative business in 1978, he assisted King in his representation of defendant. He further testified that in 1979, when King decided to incorporate, he was present when King informed Lee of those intentions. Cozzi maintained that Lee agreed that incorporation was a good idea and encouraged King to proceed with his incorporation plans.

Mr. Lee testified that defendant corporation had no objection to King bringing Cozzi into his business in 1978, or to King incorporating his business in 1979. He stated that while King mentioned to him in 1979 that he was incorporating, King did not ask his permission to do so, nor did he request defendant's consent to any assignment of his contract of April 1, 1974 to his corporation. Lee stated that there was no reason for defendant to take any position regarding King's incorporation of his business, since the form in which King chose to conduct his business was not defendant's affair, defendant having, instead, a personal service contract with King as an individual. Lee said that whether King incorporated was, therefore, entirely inconsequential to himself and the corporation which he headed.

Lee further testified that King did, in the Fall of 1987, present to defendant a revised agreement, which he referred to as a "consolidation agreement", and which did provide for plaintiff's corporation, rather than King, to be defendant's sales representative. Lee says that he declined to execute this revised agreement on behalf of defendant. Neither King nor Cozzi deny Lee's allegation that he refused to consent to such an assignment of King's contract to the plaintiff corporation when this "consolidation" agreement was presented to him in 1987. Lee further testified that in 1988, a month before King retired, King again requested that the sales representative contract be assigned from himself to plaintiff corporation. Lee testified that he again refused to give his consent.

Lee testified that upon King's retirement on July 1, 1988, defendant then utilized the services of defendant corporation on a trial basis for a short period, but terminated this new relationship effective November 30, 1989 due to the fact that Cozzi, as the sole shareholder in plaintiff corporation, did not develop any new business for defendant. It is significant that during the period from June 1, 1979, when King organized and formed plaintiff corporation, until July 1, 1988, when King retired, virtually all communications from defendant were directed to Mr. King or to his assumed name business, Hy King Associates, rather than to plaintiff corporation. Similarly, during that period virtually all of King's communications to defendant were made by him as an individual, or by his assumed name business, rather than in his capacity as chief executive officer of plaintiff corporation.

Also, all payments of commissions during that same period were made not to plaintiff corporation, but rather to King individually or to his assumed name business.

It is also noteworthy that when there were amendments and modifications of the contract of April 1, 1974, or communications regarding proposed termination of the contract, those modifications and amendments of the contract and those communications regarding possible termination were between defendant and King individually, rather than between defendant and plaintiff corporation. See especially in that regard the following plaintiff's exhibits:

Exhibit 3—January 24, 1980 (Defendant's letter to King announcing termination of the contract.)

Exhibit 4—February 7, 1980 (King's response to Exhibit 3.)

Exhibit 5—February 12, 1980 (Defendant's letter to King advising of name change of defendant corporation.)

Exhibit 6—February 28, 1980 (King's letter to defendant advising of King's rights under the contract at time of defendant's proposed termination thereof.)

Exhibit 7—May 16, 1980 (Defendant's letter to King advising that defendant was reinstating the contract.)

Exhibit 8—December 13, 1982 (Defendant's letter to King modifying the contract by raising King's commission rate.)

Exhibit 9—June 18, 1984 letter from defendant to King proposing amendment of the contract so as to provide that King also represent defendant in its sales of polyethylene foam.

Exhibit 10—June 27, 1984 letter from King to defendant, accepting defendant's proposal of June 18, 1984 to modify the contract.

## FINDINGS OF FACT

1. The 1974 sales representation contract between King and defendant was never validly assigned or transferred from Mr. King to plaintiff corporation, in that the required written consent to such assignment was never obtained.

2. At no time did defendant corporation consent, for purposes of assigning the contract of April 1, 1974, either orally or in writing, to Mr. King incorporating his sales representative agency and constituting such corporation as a party to the contract of April 1, 1974.

3. At all times subsequent to plaintiff's incorporation on June 1, 1979 defendant looked solely to Mr. King to act as its sales representative. At no time prior to King's retirement on July 1, 1988 did defendant recognize plaintiff corporation as its sales representative or did it during such period ever request plaintiff corporation to act in such capacity.

4. The sales representation contract of April 1, 1974 was a personal services contract between defendant and Mr. King and could not be assigned without the prior written consent of defendant.

5. Neither plaintiff corporation, nor Cozzi, nor King requested defendant's consent to assignment of the sales representation contract of April 1, 1974 to plaintiff corporation.

6. When consent of defendant to assignment of the contract of April 1, 1974 to the plaintiff corporation was sought and requested by Mr. King in 1987 and again in 1988, defendant corporation declined to consent to any such assignment.

7. There was no conduct of defendant corporation which waived its right to enforce the provisions restricting assignment of the sales representation contract of April 1, 1974.

8. At no time did plaintiff corporation acquire any rights under the sales representation contract of April 1, 1974.

9. Plaintiff corporation did become the sales representative of defendant corporation for a brief period following the retirement of Mr. King on July 1, 1988, under an informal oral agreement, which agreement was terminated effective November 30, 1989.

## CONCLUSIONS OF LAW

A. Defendant's written consent was a condition precedent to a valid assignment of the agreement and thus, defendant is not liable to plaintiff.

The validity of an assignment of the agreement from King to his corporation was conditioned upon his obtaining defendant's written consent to such an assignment. On this point, the language of the agreement could not be more clear:

"5. ... Agent [C. Hyatt King] shall not assign or transfer this Agreement or any rights or obligations hereunder except with the prior written consent of Principal [the Defendant]. Any attempt at assignment without such written consent shall be deemed null and void and of no effect."

Michigan courts have defined a "condition precedent" as a fact or event which the parties intend to exist or take place before this is a right to performance. *MacDonald v. Perry*, 342 Mich. 578, 70 N.W.2d 721 (1955).

In *Smeader v. Mason*, 341 Mich. 139, 67 N.W.2d 131 (1954), plaintiff and defendant entered into a contract for the sale of a tavern, which was expressly conditioned upon the approval of transfer of the liquor license from defendant to plaintiff within sixty days from the date of the agreement. Failure to obtain the necessary approval rendered the agreement null and void. When defendant failed to obtain the necessary approvals, plaintiff sued to retain a portion of defendant's deposit. The court ruled against plaintiff, stating that the parties, in their written agreement, "manifested an intention that the duty to render the promised performance was subject to the express condition

[of liquor license approval] . . . No liability can be predicated upon an agreement which the parties by the express and unambiguous terms declared shall be void upon the failure of a condition."

In the present case, the agreement clearly and unambiguously declares that any assignment without defendant's written consent "shall be deemed null and void and of no effect." Clearly, defendant's liability in this case is predicated on a valid assignment of the agreement to plaintiff. Because the agreement was never assigned, defendant cannot be liable to plaintiff.

If it had been the intention of the parties that Mr. King could substitute a corporation or another individual for himself as defendant's exclusive sales representative, certainly the "successors and assigns" clause would not have been specifically limited. Indeed, one finds language qualifying the ability of a third party to benefit from the agreement. Section 5.G. provides:

> This agreement shall bind and inure to the benefit of the parties hereto or their assigns, but shall be [assigned] by the agent only with the consent of the principal.

The language of Sections 5.A. and 5.G. is clear and unambiguous and must be construed against plaintiff as a matter of law, i.e., that there is no contractual relationship under the agreement between plaintiff and defendant.

■ It is a basic rule of construction that a court cannot change the terms of an agreement. *Purlo v. 3925 Woodward Ave.*, 341 Mich. 483, 67 N.W.2d 684 (1955). Nor can it supply material provisions absent from a clear and unambiguous writing. *Giffels & Vallet v. Edward C. Levy Co.*, 337 Mich. 177, 58 N.W.2d 899 (1953).

B. The agreement between defendant and King was personal in nature and therefore was not assignable without defendant's consent.

This case involves an agreement on the part of Mr. King to perform personal services on behalf of defendant. The relationship between King and defendant was formed as a result of defendant's confidence in Mr. King's skills and abilities. Not surprisingly, the agreement (as is the case with virtually all agreements calling for personal services) contains a clause (Paragraph 5) prohibiting an assignment without defendant's written consent.

Without this express restriction, defendant might have risked unintentionally acquiescing to assignment of the agreement to someone other than Mr. King. Defendant's position might well have become very tenuous indeed if assignment to a corporation were accomplished (as plaintiff alleges in this suit), since a corporation could have hired virtually anyone to represent defendant's products, leaving defendant without any voice or veto power. Thus, defendant had an abiding interest in limiting the opportunity of its sales representative to assign this personal service contract.

■ In Michigan, it has been specifically held that a contract, giving an exclusive sales agency within a certain territory, is personal in nature and not assignable by the agent without the principal's consent.

*Detroit Postage Stamp Service Co. v. Schermack*, 179 Mich. 266, 146 N.W. 144 (1914) is directly on point. In that case defendant granted to an individual an exclusive selling agency for its stamp vending machines in the agent's city. Shortly thereafter, the agent assigned his rights to a corporation which had been formed subsequent to the date of the original agreement between the agent and defendant. When defendant failed to deliver the stamp machines to the agent which the agent had previously purchased, plaintiff (the corporation subsequently formed by the agent) sued defendant for breach of contract.

In that case, even though defendant was aware of the subsequent incorporation of the agent's business, and even though defendant itself suggested that the agent incorporate, and even though defendant accepted funds from plaintiff's account in payment for other machines, the trial court awarded defendant a directed verdict. The court found that the contract between defendant and the agent was a personal one, and not assignable without defendant's consent, and that there was no privity of contract between plaintiff and

defendant. Specifically, the Michigan Supreme Court stated:

"When rights out of a contract are coupled with obligations to be performed by the contractor and involve such a relation of personal confidence that it must have been intended that the rights should be exercised, and the obligations performed by him alone, the contract, including both is rights and his obligators, cannot be assigned without the consent of the other party to the original contract." 179 Mich. at 276.

In the instant action there is no evidence that defendant ever consented or agreed to substitute plaintiff for Mr. King, or that it ever agreed to assign to plaintiff the right to be paid severance commissions pursuant to the agreement.

Although defendant was aware of Mr. King's incorporation, and may have occasionally referred in documents to "Hy King Associates, Inc.", under the rule of *Detroit Postage Stamp Service Co., supra,* this does not justify a finding that a valid assignment took place.

C. Even if the court were to disregard the agreement's express prohibition on assignment without written consent, plaintiff fails to meet its burden of proving that defendant consented to assignment.

█ In Michigan, it is basic and fundamental contract law that there must be a meeting of the minds not only to make a contract but also to rescind or modify a contract after it has been made. *Universal System v. Herrud and Co.,* 366 Mich. 473, 115 N.W.2d 294 (1962); *Wiljamaa v. Board of Education of Flint,* 50 Mich.App. 688, 213 N.W.2d 830 (1973). In the *Universal System* case, the parties entered into a sale-lease back agreement, whereby defendant sold its trucks to plaintiff and plaintiff would then lease the trucks back to defendant. The lease agreement provided for termination by either party, and upon termination, defendant would purchase the trucks then on hand from plaintiff for a specified price. The dispute in the *Universal System* case arose due to the fact that plaintiff made certain improvements to the trucks while they were in plaintiff's possession, the value of which plaintiff wanted to include in determining the specified repurchasing price. Because the lease agreement did not include a provision which took into account the value of the improvements for purposes of determining the purchase price, the court ruled against plaintiff, stating:

"The basic agreement between the parties was set forth in the lease and this agreement could not be changed by either party without the consent of the other. A meeting of the minds is required not only to make a contract but, also, to rescind or modify it after it has been made. We agree with the [circuit] court's construction of the lease and the decision he made in regard to the question of tires."

█ In the instant action the evidence clearly shows that after Mr. King decided to incorporate Hy King Associates, communications between defendant and Mr. King (as well as Mr. Cozzi), continued to be generated by Mr. King's sole proprietorship. While it is true, that at various times, other communications between defendant and Mr. King made reference to "Hy King Associates, Inc.", this was done, at best, on an inconsistent and infrequent basis, and in a manner which clearly shows that the incorporation was incidental to the personal business relationship between defendant and Mr. King. Quite simply, there was never a meeting of the minds between the parties, by which they mutually assented to modify the agreement for purposes of substituting plaintiff for Mr. King as defendant's sales representative.

█ Finally, plaintiff has contended that defendant, through its conduct, has somehow acquiesced to the assignment, or waived the agreement's requirement that the agreement could be validly assigned only upon the prior written consent of the defendant. In *Fitzgerald v. Hubert Herman, Inc.,* 23 Mich.App. 716, 179 N.W.2d 252 (1970), the Michigan Court of Appeals defined waiver as follows:

"To constitute a waiver, there must be an existing right, benefit, or advantage, knowledge, actual or constructive, of the existence of such right, benefit, or advantage, and an actual intention to relinquish it ... A waiver is the intentional relin-

quishment of a known right ... it implies an election to forego some known advantage which might have been insisted upon (citation omitted), which induced a belief of an intention and purpose to waive."

See also *Bissell v. L.W. Edison Company*, 9 Mich.App. 276, 156 N.W.2d 623 (1967).

In the case at bar, both parties have presented this court with numerous exhibits showing that at one time or another, subsequent to the formation of the corporate plaintiff, the parties communicated with each other via correspondence and memoranda which made reference to "Hy King Associates, Inc.", "Hy King Associates", and/or "Hy King". This evidence does nothing more than establish an inference that defendant may have nominally recognized the corporate plaintiff, but does not establish that defendant elected to waive or disregard a contractual provision expressly requiring a writing for a valid assignment. In short, plaintiff's proofs do not support the claim that defendant intentionally relinquished its right to consent in writing to an assignment of the agreement.

### HOLDING

Plaintiff has failed to sustain its burden of proof herein and consequently a judgment of no cause for action will enter herein.