**Marquita PALMER, Plaintiff,**

v.

**The CIRCUIT COURT OF COOK COUNTY, SOCIAL SERVICE DEPARTMENT, Defendant.**

No. 94 C 3508.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 30, 1995.

Marquita Palmer, Chicago, IL, pro se.

Robin R. Shartiag, Circuit Court of Cook County, Legal Research Division, Chicago, IL, Margaret Kostopulos, Office of the Chief Judge, Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

This case is about a serious personality dispute between an employee, her supervisor and her fellow workers. Plaintiff, Marquita Palmer ("plaintiff"), sues defendant, the Circuit Court of Cook County, for race and disability discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, respectively. Plaintiff alleges that she was suspended and terminated from her employment with the defendant, the Circuit Court of Cook County, due to her race and mental illness. Defendant maintains that plaintiff was terminated due to a pattern of misconduct involving threatening statements. Defendant moves for summary judgment on both Count I, race discrimination, and Count II, disability discrimination. For the reasons that fol-

low, defendant's Motion for Summary Judgment is granted on both counts.

**BACKGROUND** [1]

Plaintiff, Marquita Palmer, is an African–American woman who was employed by the Circuit Court of Cook County from about October 1990, through on or about September 28, 1993. (Defendant's Rule 12(M) Statement of Uncontested Facts ¶¶ 1, 9). In October of 1990, plaintiff was hired by the Social Service Department as a court liaison at Traffic Court and worked there until September of 1992. (Rule 12(M) ¶¶ 6, 7).

On May 29, 1992, plaintiff received a written warning from her supervisor, Sharon Welch, a Caucasian woman. The warning described three incidents in which plaintiff "made abusive personal and profane statements to a fellow employee." (Written Warning dated May 29, 1992). Soon after, Clara Johnson, an African–American woman, became plaintiff's supervisor at Traffic Court in June of 1992. (Rule 12(M) ¶ 8, 10).

Despite this warning, another dispute between the plaintiff and a different co-worker arose on August 17, 1992. Although no one except the plaintiff observed plaintiff's co-worker, Nicki Lazzaro, a Caucasian woman, threaten plaintiff with bodily harm, several witnesses observed the plaintiff verbally threaten Ms. Lazarro. (Aff. of Johnson, Aff. of Lazzaro, Aff. of Castaneda, Aff. of Rhames). Plaintiff admits that she made the following statement to Nicki Lazzaro on the date in question, "Ni[c]ki, look, if you don't leave me alone, I'm going to throw you out the window." (Dep. of Palmer at 64.). However, despite witness testimony to the contrary, plaintiff maintains that Ms. Lazzaro struck and pushed her without provocation. (Aff. of Palmer, Aff. of Johnson, Aff. of Lazzaro, Aff. of Castaneda, Aff. of Rhames). Plaintiff was suspended from the Circuit Court for ten days following the incident with Ms. Lazzaro. Within the suspension letter, the Director of the Social Services Department, Chelsea Pollock, Jr., noted that three

---

1. The following background facts have been drawn from the parties' Local Rule 12(M) and (N) Statements of Material Facts as to which there is no genuine issue and the accompanying exhibits, *see* UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS LOCAL RULES Rule 12, as well as the various other pleadings and exhibits submitted to the Court in connection with the pending motions.

other recent, documented occasions (July 22, 29, and 31, 1992) in which plaintiff made "inappropriate and unprofessional remarks" to Ms. Lazzaro were also being taken into account in authorizing the ten-day suspension. (Suspension Letter dated August 19, 1992). Plaintiff argues that she was unfairly treated by her supervisor, Clara Johnson, with respect to the incident since she was disciplined while Ms. Lazzaro was not.

On September 1, 1992, Plaintiff allegedly made an "inappropriate and unprofessional remark" to Clara Johnson. Due to the recurrent misconduct, plaintiff was suspended for another seven days. (Suspension Letter dated September 14, 1992). Upon her return to work, plaintiff was transferred to the 26th and California building, where Dawn Bushma became her supervisor. (Rule 12(M) ¶¶ 16, 17). Despite the transfer, plaintiff unfortunately still came into contact with her former supervisor, Clara Johnson. (Rule 12(M) ¶ 18). On March 5, 1993, plaintiff encountered Clara Johnson in the hall at 26th Street, where Ms. Johnson asked plaintiff about some court memos. (Rule 12(M) ¶¶ 18, 19). While the parties disagree as to what exactly took place in the hallway, it is undisputed that plaintiff did not attend work the following Monday due to the confrontation. (Rule 12(M) ¶ 20). On or about March 24, 1993, plaintiff took an extended leave of absence to attend an out-patient program for mental illness. (Am.Compl. ¶ 18). At this time, plaintiff was prescribed an antipsychotic medication to treat her paranoid delusions. (Letter from Dr. Robert A. Channon dated July 29, 1993).

On April 6, 1993, plaintiff's therapist, Marcy Axelband, telephoned plaintiff's immediate supervisor, Dawn Bushma, to request a meeting with plaintiff, Ms. Bushma, and Ms. Johnson. (Dep. of Axelband at 23). While there is a dispute between the parties as to what exactly was to be discussed at the meeting, Ms. Axelband stated that the meeting was scheduled for the purpose of resolving some of the conflict so that plaintiff could return to work "with more comfort than

clearly she was having currently." (Dep. of Axelband at 23–24). However, Dawn Bushma called plaintiff's therapist back and stated that the department would not meet with her. (Rule 12(M) ¶ 23).

After receiving the news that the department was not willing to meet, plaintiff telephoned the Traffic Court several times on or about April 7 and 8, 1993.[2] Specifically, plaintiff telephoned Clara Johnson and called her a "bitch." (Rule 12(M) ¶ 25). In another conversation, plaintiff telephoned Carmen Castaneda, an ex-coworker from Traffic Court, and stated that she was "so sick" of Clara Johnson she "could just kill her" and that Clara Johnson "would be better off dead." (Rule 12(M) ¶¶ 26, 27). In yet another conversation, plaintiff telephoned Nicki Lazzaro and called her a "bitch" also. (Rule 12(M) ¶ 28). Based on plaintiff's inappropriate behavior in telephoning the Traffic Court, Ms. Axelband felt plaintiff was a danger to others and initiated involuntary commitment proceedings. (Rule 12(M) ¶ 30, Dep. of Axelband at 34, Dep. of Axelband Exh. 2). Plaintiff remained an inpatient at Michael Reese Hospital until July 1, 1993. (Am.Compl. ¶ 23). The diagnosis of plaintiff while a patient at Michael Reese Hospital was "(1) Delusional (paranoid) disorder[, and] (2) Major Depression." (Letter from Dr. Robert A. Channon dated July 29, 1993).

On July 1, 1993, Mr. John E. Bentley, Director of the Social Service Department, wrote plaintiff to inform her that her employment with the Social Service Department had been terminated effective July 1, 1993. (Termination Letter dated July 1, 1993). The reason given for plaintiff's termination was as follows:

> Your employment record over the last year reflects a pattern of abusive behavior. Based on your inappropriate actions on April 7th and 8th, and in light of your past record and our warnings that future occurrences would result in more serious disciplinary actions including termination of employment, your employment with the

---

**2.** Plaintiff asserts that such behavior is directly related to her taking the antipsychotic medication, Navane; however, she has failed to present any medical evidence to support such a theory.

Social Service Department is terminated effective July 1, 1993.

(Termination Letter dated July 1, 1993). However, in a letter dated August 19, 1993, Mr. Michael J. Rohan, Director of Probation and Court Services for the Circuit Court of Cook County, informed Ms. Palmer's attorney, at the time, that:

> Based on Ms. Palmer's seniority with Cook County, she was eligible to receive medical disability up to September 28, 1993. Therefore, I will direct Mr. Bentley, or his designee, to process the necessary paperwork to reinstate Ms. Marquita Palmer, without pay, for the purpose of allowing her to be eligible to receive her disability benefits through their expiration date.

(Letter to Mr. Flynn dated August 19, 1993). Upon the expiration of plaintiff's disability benefits in September of 1993, however, Mr. Rohan affirmed Mr. Bentley's decision to terminate plaintiff's employment with the Circuit Court of Cook County. (Letter to Mr. Flynn dated November 3, 1993).

On or about June 6, 1994, Plaintiff received a right to sue letter from the U.S. Department of Justice, Civil Rights Division. (Rule 12(M) ¶ 3). Plaintiff filed the instant complaint in the United States District Court for the Northern District of Illinois within 90 days from receipt of her right to sue letter. (Rule 12(M) ¶ 4). Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of establishing that there is no genuine issue of material fact. A material question of fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once the moving party has met their burden, the opposing party must go beyond the pleadings and set forth specific facts in affidavits or otherwise show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–327, 106 S.Ct. 2548, 2551–55, 91 L.Ed.2d 265 (1986). The opposing party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment and may not rest upon allegations or denials of the pleadings." *Valentine v. Joliet Township High School Dist.,* 802 F.2d 981, 986 (7th Cir.1986); *see also Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991). The court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Bowyer v. U.S. Dept. of Air Force,* 804 F.2d 428, 430 (7th Cir.1986). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–250, 106 S.Ct. at 2510–11. In making its determination, the Court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor, "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

At the outset, it is important, since plaintiff is currently representing herself on a *pro se* basis,[3] to indicate what this case is not about.

---

3. Although *pro se* now, the Court granted plaintiff's request for counsel during the course of this litigation and appointed an experienced employment discrimination lawyer to represent her. Plaintiff, however, ultimately rejected the efforts of counsel on her behalf due to personality con-

flicts and other disagreements and therefore appointed counsel was forced to withdraw. Thereafter, this Court has attempted to give special consideration to Ms. Palmer's status as a *pro se* litigant and has carefully reviewed all of her

In resolving disputes in the workplace, this Court does not sit as a "super-personnel department that reexamines an entity's business decisions." *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992) (citations omitted). Additionally, the role of the Court is not to determine if the plaintiff was treated fairly. "It is well-settled in [the Seventh Circuit] and other circuits that an employer may terminate an employee for any reason, good or bad, or for no reason at all, as long as the employer's reason is not proscribed by a Congressional statute." *Kahn v. United States Secretary of Labor,* 64 F.3d 271 (7th Cir.1995). "[A]n employee's insubordination toward supervisors and coworkers" even if simply perceived rather than real, "is justification for termination." *Id.* Thus "[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers," this Court simply may not judge the conduct of Ms. Palmer's supervisors and co-workers apart from the relevant legal standards. These legal standards limit this Court's role to determining whether the plaintiff was a victim of intentional discrimination on the basis of some immutable characteristic. In this case, the plaintiff claims that she was discriminated against on the basis of her race and disability.

## II. *Count I: Race Discrimination*

■ An employee may establish a prima facie Title VII case by showing that: (1) she belongs to some protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly-situated employees outside her classification more favorably. *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). When an employee satisfies each of the above prongs, she raises an inference of discrimination. *Id.* Plaintiff, in the instant case, easily satisfies element

one in that she belongs to a protected class due to her race as an African–American woman. Element two is also satisfied for the purposes of this claim since plaintiff's employer does not argue that her work product was unsatisfactory. Element three is met due to the fact that plaintiff suffered an adverse employment action when she was suspended and ultimately terminated from the Circuit Court of Cook County. Plaintiff, however, is unable to establish the fourth element of the prima facie case. She has not shown that the Circuit Court of Cook County treated similarly-situated employees outside her race more favorably.

Plaintiff asserts that her employer discriminated against her on the basis of race by disciplining her for disputes with Ms. Nicki Lazzaro, a Caucasian co-worker, while failing to discipline Ms. Lazzaro for her contribution to the incident. Plaintiff, however, has failed to provide any evidence that she and Ms. Lazzaro were similarly situated. For example, not only have several of plaintiff's co-workers testified that plaintiff threatened Ms. Lazzaro with bodily harm, but plaintiff, herself, also admits in her deposition that she had in fact threatened Ms. Lazzaro.[4] Plaintiff, however, has offered no evidence that Ms. Lazzaro threatened or acted violently toward her, other than through her own affidavit testimony. While the co-workers' statements that they did not see Ms. Lazzaro threaten plaintiff do not directly rebut plaintiff's allegation that Ms. Lazzaro struck and pushed her, they do leave plaintiff's assertions without corroborating evidence in the record.

■ In the Seventh Circuit, "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993). Thus, a party seeking to avoid summary judgment may not establish a dispute of material fact on unsubstantiated assertions in its factual summary or affidavits. *See e.g., Koelsch v.*

---

supplemental submissions and pleadings before issuing this decision.

**4.** For co-worker witness testimony see Aff. of Johnson, Aff. of Lazzaro, Aff. of Castaneda, Aff.

of Rhames. Ms. Palmer, herself, admitted to stating "I finally just said, Ni[c]ki, look, if you don't leave me alone, I'm going to throw you out the window." (Dep. of Palmer at 64).

*Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir.1995) (bare assertion in deposition testimony insufficient to establish causal link where "[t]he record contains absolutely nothing in the way of corroboration of her claims."); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir.1993) ("unsubstantiated assertion" is not enough to create a genuine issue"); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985) ("conclusory statements unsupported by specific facts are not sufficient to raise a genuine issue of material fact"). *See also Jansen v. Packaging Corp. of Am.*, 895 F.Supp. 1053, 1068 (N.D.Ill.1995) (Shadur, J.) (corroboration of self-serving testimony necessary to support inference raised by statement in favor of the deponent). Similarly, unsubstantiated statements or assertions made in affidavits that contradict earlier admissions of fact in a deposition, which if true would entitle the moving party to a judgment, will not be allowed to create a genuine issue of material fact defeating summary judgment. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir.1985). *See also Darnell v. Target Stores*, 16 F.3d 174, 176–177 (7th Cir.1994); *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1210 (7th Cir.1993); *Slowiak*, 987 F.2d at 1295.

■ In her affidavit, plaintiff claims that Ms. Lazzaro struck and pushed her without provocation. (Aff. of Palmer). However, in plaintiff's earlier deposition, where she admitted her intent to "throw" Ms. Lazzaro "out the window," plaintiff never mentioned that Ms. Lazzaro pushed or struck her, creating an apparent contradiction between the earlier deposition and the subsequent affidavit. As noted, unsubstantiated and self-serving testimony in an affidavit that contradicts earlier deposition testimony is simply not sufficient under Rule 56(e) to create a genu-

ine issue of material fact and defeat an otherwise properly supported motion for summary judgment where there is no other corroborating evidence in the record to support this statement. *See Koelsch*, 46 F.3d at 708. Therefore, even though the Court must take all reasonable inferences arising from the evidence in the light most favorable to the plaintiff, the Court finds that the evidence is insufficient to support a reasonable inference that Ms. Lazzaro pushed and struck plaintiff, provoking the confrontation. *See Jansen*, 895 F.Supp. at 1068.

■ However, even if plaintiff's evidence were sufficient to create a genuine issue of fact regarding whether Ms. Lazzaro acted as plaintiff describes, that fact would not be *material* to the court's determination that plaintiff and Ms. Lazzaro were similarly situated as a matter of law. Ms. Lazarro's conduct is not ultimately material because there is no evidence that Ms. Lazzaro had received a previous written warning for her behavior in the office, as did the plaintiff at the time of her ten-day suspension.[5] Thus, assuming that Ms. Lazzaro was equally responsible for the confrontation that occurred with plaintiff, the two individuals were not similarly situated with respect to the disciplinary action taken by the Circuit Court because plaintiff had formerly received a written warning to refrain from making any "abusive personal and profane statements" to a fellow employee, and Ms. Lazzaro had not. Plaintiff admits that she threatened to throw Ms. Lazzaro out the window after receiving this warning. Therefore, the Circuit Court of Cook County was entitled to discipline the plaintiff. The fact that Ms. Lazzaro was not similarly disciplined for her alleged misconduct may seem extremely unfair, but it does not violate Title VII. Thus, the Court cannot find that the two women were "similarly situated" for purposes of Title VII.[6]

---

5. *See* Suspension Letter dated August 19, 1992, and Written Warning dated May 29, 1992 for evidence of plaintiff's prior misconduct.

6. Certainly, there is no law that states that Ms. Palmer and Ms. Lazzaro were not similarly situated, as Ms. Palmer surely knows. Our finding is a legal matter because the facts do not permit a reasonable jury to find that Ms. Palmer and Ms.

Lazzaro were similarly situated at the time of the discipline given that Ms. Palmer had been previously warned about similar misconduct, but Ms. Lazzaro had not. The term "similarly situated" does not refer to the unlawful characteristic of "race," but to the other material conditions of their employment, *i.e.*, job status, job history, job performance (including disciplinary actions), etc. *See Hill v. Burrell Comm. Group, Inc.*, 67 F.3d 665, 669 (7th Cir.1995).

Plaintiff also asserts that Ms. Barbara Rhames "made unprofessional and inappropriate remarks to supervisors and w[as] not disciplined for doing so." (Plaintiff's Rule 12(N) Statement ¶ 33). Barbara Rhames, a Caucasian woman, stated in her deposition that she had been yelled at by Clara Johnson in the past because "I didn't think she was doing her job and I told her." (Dep. of Rhames at 25). Once again, plaintiff fails to provide evidence that Ms. Rhames · used threatening and/or provocative statements when speaking with Ms. Johnson or had a history of misconduct in the workplace. Plaintiff has, therefore, failed to illustrate that Ms. Rhames and herself were "similarly situated" individuals who were treated differently from one another.

After review of this evidence, the Court must find that plaintiff has failed to show that the Circuit Court of Cook County treated similarly-situated employees outside her race more favorably. "Where the nonmovant is unable to establish at least the minimal elements of the prima facie case under the *McDonnell Douglas* methodology, the entry of summary judgment is required." *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 568 (7th Cir.1989) (following *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Therefore, summary judgment for Count I is granted, as a matter of law, because plaintiff has failed to establish a prima facie case of race discrimination.

### III. *Count II: Disability Discrimination*

■ Plaintiff alleges that she was discriminated against on the basis of her alleged disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"). The ADA provides:

No covered entity shall discriminate against a qualified individual with a disabil-

ity because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112. Plaintiff's ultimate burden in this case is to prove that she was discriminated against on the basis of her disability. To prevail on a claim for disability discrimination, the plaintiff must establish that: (1) she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; and (3) that she suffered an adverse employment action because of her disability. *Weiler v. Household Fin. Corp.*, No. 93 C 6454, 1995 WL 452977, at *3, 1995 U.S.Dist. LEXIS 10566, at *7–8 (N.D.Ill. July 27, 1995); *Byrne v. Board of Education*, 979 F.2d 560, 563 (7th Cir.1992).[7]

### A. Disability

■ The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [the disabled] individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2). According to the Guidelines issued by the EEOC to implement the ADA, the term "major life activities" as used in the ADA includes such activities as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Plaintiff has produced no evidence that she is substantially limited by her depression and paranoia in any of the listed activities. She simply makes the conclusory assertion that "[t]he condition, variously diagnosed as depression or paranoia, is a 'men-

---

7. *Byrne* contained an additional element requiring that the entity receive federal funds due to the fact that it alleged a Section 504 violation under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.;* however, that element is inapplicable in ADA claims. Congress borrowed heavily from the language in the Rehabilitation Act in

enacting the ADA, and has indicated that the substantial case law developed under the Rehabilitation Act shall be generally applicable to the term "disability" as used in the ADA. 29 C.F.R. Pt. 1630.2(g), App. In fact, case law under the Rehabilitation Act has been used broadly in in-

tal illness' within the meaning of the ADA." [8] (Pl.Mem. in Res. to Def.Mot. for Sum.Jud. at 6).

While plaintiff makes the assertion that she is disabled due to her mental illness, she does not provide any evidence that: 1) her mental illness substantially limits major life activities; 2) she has a history of an impairment that so limits her; or 3) she is regarded as having such an impairment. In fact, plaintiff specifically stated in her deposition, "I got along with everyone. I usually get along with people. *I never had this problem before, and especially in a job situation.*" (Dep. of Palmer at 80) (emphasis added). Further, plaintiff stated, "I could walk in anyone's office, judge's office, get a piece of cake you know, Hi, walk out, you know, court reporters and then, when Clara came in, it was basically hell." (Dep. of Palmer at 84).

█ The evidence shows that plaintiff had a personality conflict with her supervisor, Clara Johnson, and her co-worker, Nicki Lazzaro—although one which caused her to suffer anxiety and depression to an apparently significant degree. (Humana Health Care Plans, Michael Reese, Supplementary Record located within attached documents to Plaintiff's Status Report at 10–12). "A disability is a part of someone and goes with her to her next job. A personality conflict, on the other hand, is specific to an individual...." *Weiler*, 1995 WL 452977 at *5, 1995 U.S. LEXIS at *12.

In a case involving a similar fact pattern, *Adams v. Alderson*, 723 F.Supp. 1531 (D.D.C.1989), the court held that a personality conflict with an "antagonizing supervisor" did not constitute a disability under the ADA. In *Adams*, the plaintiff suffered from an "adjustment disorder with mixed disturbance of emotion and conduct" and a "compulsive personality disorder." The plaintiff in *Adams* had been fired after physically assaulting his supervisor, and claimed that he was a disabled individual under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*[9] The plaintiff's psychiatrist had testified that the plaintiff's condition resulted from the stress of working under his supervisor. The *Adams'* Court found that the plaintiff was not disabled, stating:

> Adams' present psychiatrist (and expert witness) describes his condition as a "maladaptive reaction to a psychosocial stressor," viz., the antagonizing supervisor, which is, however, a transitory phenomenon that can be expected to disappear when the "psychosocial stressor" is removed. It is therefore, hardly an "impairment" which "substantially limits one or more ... major life activities." 29 U.S.C. § 706(8)(B).

*Adams*, 723 F.Supp. at 1531.

Courts have uniformly rejected the notion that inability to work at a particular position renders a person disabled under the ADA. *See Weiler*, 1995 WL 452977 at *5, 1995 U.S. Dist. LEXIS at *13–14 (and cases cited therein). The EEOC regulations provide that with respect to the major life activity of working, the term "substantially limits" means "significantly restricted in the ability

---

terpreting the ADA. *See, e.g., Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928 (7th Cir.1995).

**8.** Plaintiff's only cited authority for such a conclusion is 29 C.F.R. § 1630.2(i) and *McWilliams v. AT & T Info. Sys.*, 52 FEP Cases 383, 728 F.Supp. 1186 (W.D.Pa.1990). As noted earlier, 29 C.F.R. § 1630.2(i) states: "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Plaintiff's conclusory statement that her "illness" meets the ADA standards based on this section of the C.F.R., without further discussion, is meaningless to the Court. In addition, plaintiff's citation to the FEP case, *McWilliams*, is ineffectual because the *McWilliams'* Court did not hold that

depression was considered a mental illness under the ADA, but merely stated:

> We cannot determine the extent of Ms. McWilliams mental [**9] impairment based on the pleadings before the Court on this motion to dismiss. However, in Paragraph 12 of her Complaint, plaintiff alleged that she experienced physical and nervous exhaustion and was diagnosed by a psychiatrist as suffering from severe depression and anxiety. Considering these allegations in the light most favorable to plaintiff, we determine at this stage in the litigation that her depression and anxiety constitute a mental impairment.

*McWilliams*, 728 F.Supp. at 1190.

**9.** *See* explanation regarding the use of the Rehabilitation Act in ADA cases *supra* note 4.

to perform either a class or a broad range of jobs in various classes. . . . The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3). Plaintiff's inability to get along with Clara Johnson and Nicki Lazzaro does not substantially limit her ability to work in general—it may just limit her ability to work with these particular individuals. Therefore, based on the foregoing testimony of the plaintiff that her work difficulties were specifically due to a conflict with her supervisor, plaintiff, as a matter of law, is not "disabled" according to the ADA.[10]

## B. Qualified Individual

■ Even if plaintiff were able to show that she were disabled under the ADA, plaintiff still could not prevail on this claim because she is unable to establish that she is qualified for the position. The ADA defines the term "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The first step in determining whether an employee is "qualified" requires the court to determine whether this person can perform the essential functions of the job. Inquiry into whether a particular function is "essential" focuses on whether employees in the position are actually required to perform that function. See 29 C.F.R.App. § 1630.2(n) (1991). The key determination turns on "whether removing the function would fundamentally alter the position." See id.

Plaintiff's documented work history demonstrates that, although she could perform the substantive work required, she could not perform her job in the company of her supervisor, Clara Johnson, or her co-worker, Nicki Lazzaro. Over a two and a half month peri-od (July 22 through September 1, 1992), plaintiff's supervisor documented five separate instances of inappropriate and unprofessional conduct carried out by plaintiff in the work place. As a result of this misconduct, plaintiff was suspended from work two times for a total of seventeen days. (Suspension Letters dated August 19, 1992, and September 14, 1992). In one instance, plaintiff was disciplined for making threats of physical violence. (Suspension Letter dated August 19, 1992).

Plaintiff also repeatedly used abusive language in the workplace. For example, Nicki Lazzaro testified in her deposition that she witnessed plaintiff's abusive and threatening conduct. Nicki Lazzaro asserts, and three witnesses have testified to the same fact, that on August 17, 1992, Marquita Palmer threatened her with bodily harm. (Aff. of Lazzaro, Johnson, Castaneda, and Rhames). In fact, plaintiff admits saying to Nicki, "if you don't leave me alone, I'm going to throw you out the window." (Dep. of Palmer at 64). Carmen Castaneda, a former co-worker, recounts another incident in which plaintiff exhibited abusive and potentially dangerous behavior during a phone call she received from plaintiff on April 8, 1993. (Aff. of Castaneda).

■ Courts have consistently held that one who displays abusive and threatening conduct towards co-workers is not an otherwise "qualified individual." See Gordon v. Runyon, 1994 WL 139411, at *4–5, 1994 U.S.Dist. LEXIS 4959, at *11–13 (E.D.Pa. April 21, 1994), aff'd, 43 F.3d 1461 (3d Cir. 1994); Mazzarella v. United States Postal Service, 849 F.Supp. 89 (D.Mass.1994); see also, Pesterfield v. Tennessee Valley Authority, 941 F.2d 437, 442 (6th Cir.1991) (explained that an employee with a mental disability which caused negative reactions to supervisors' criticism, could not perform the essential functions of his job and, therefore,

---

10. Plaintiff asserts that the Court should find her disabled under the ADA since the Social Security Administration determined that she was "unable to perform substantial gainful employment for at least a six month period effective September, 1993." (Pl.Mem. in Res. to Def.Mot. for Sum. Jud. at 6). However, as properly noted by the defendants (Def.Rep.Br. to Pl.Res. to Def.Mot. for Sum.Jud. at 4), determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA. Smith v. Dovenmuehle Mortgage, Inc., 859 F.Supp. 1138, 1141 (N.D.Ill. 1994); Overton v. Reilly, 977 F.2d 1190 (7th Cir.1992).

was not a "qualified employee"). In addition, the employer is not required to eliminate any of the disabled employee's essential employment functions in order to accommodate such disability. *See Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991). The essential functions of any job include avoidance of violent behavior that threatens the safety of other employees. *See, e.g., Adams v. Alderson*, 723 F.Supp. 1531 (D.D.C.1989), *aff'd*, 1990 WL 45737 (D.C.Cir.1990) ("One who is unable to refrain from doing physical violence to the person of a supervisor, no matter how unfair he believes the supervision to be or how provocative its manner, is simply not otherwise qualified for employment."). Plaintiff's job as a caseworker with the Circuit Court of Cook County required her to get along with co-workers and her supervisor. However, plaintiff's continued disruptive and abusive behavior demonstrates her inability to deal with her co-workers in a civil manner. Therefore, plaintiff has not demonstrated that she was "qualified" for her position due to her inability to manage her work relationships.

### C. Reasonable Accommodation

The conflict plaintiff experienced with Clara Johnson and Nicki Lazzaro, however, may not be solely attributable to plaintiff's "inability to manage her work relationships" but might also have been due to the behavior displayed by Johnson and Lazzaro. The Circuit Court of Cook County apparently recognized that fact and transferred plaintiff to a new building and gave her a new supervisor. The decision to transfer plaintiff was, in this Court's view, the classic example of a "reasonable accommodation." [11] Under the ADA, an employer is obligated to reasonably accommodate the known physical or mental limitations of an otherwise qualified individual with a disability, unless the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). The ADA defines "reasonable accommodation" to include restructuring a job to eliminate the "non-essential" func-

tions that make it difficult or impossible for the disabled employee to perform the essential functions of the job. The non-essential functions of plaintiff's job included working with Clara Johnson and Nicki Lazzaro. The defendant decided not to terminate plaintiff after her conflict with those co-workers, but instead chose to transfer her to the 26th and California building, thereby eliminating the non-essential functions of plaintiff's job to accommodate plaintiff's disability, *i.e.*, the expression of her mental illness as it manifested itself in a personality conflict with Johnson and Lazzaro. Unfortunately, plaintiff and Ms. Johnson met in the hallway on March 5, 1993, and Ms. Johnson unfortunately asked plaintiff about some court memos. This chance encounter set off another conflict between plaintiff, Johnson and Lazzaro that led to plaintiff's current troubles and the termination of plaintiff's employment.

There is no dispute that plaintiff was fired due to her inability to control the expression of her mental illness in the workplace. The issue is whether the defendant could have accommodated this illness without undue hardship. Defendant contends that the transfer was its only means of reasonable accommodation and that the continued animosity expressed by plaintiff towards Johnson and Lazzaro required termination. Plaintiff asserts that her threatening behavior (referring to the phone calls placed on April 7 and 8, 1993), unlike that in the other cases cited herein, did not occur until after the defendant's representatives failed to attend a meeting requested by her therapist, Marcy Axelband. (Pl.Mem. in Res. to Def. Mot. for Sum.Jud. at 8–9). Marcy Axelband testified that the refusal to meet, interacting with plaintiff's illness, caused the outburst (the April phone calls) that led to her termination. Plaintiff thereby asserts that she only acted inappropriately **after** her rights were violated under the ADA for failure upon the part of the defendant to "reasonably accommodate" her illness.

---

11. In addition, the record indicates that defendant did attempt to assist plaintiff in dealing with her conflicts with Clara Johnson and Nicki Lazzaro by referring her for mental health counsel-

ing following the August 17, 1992, incident with Ms. Lazzaro. (Pl.Mem. in Res. to Def.Mot. for Sum.Jud. at 7).

The chain of causation plaintiff wants the Court to draw is not consistent with the legal standards this Court must apply to the facts. While this Court does not dispute that plaintiff's inappropriate and offensive phone calls, made to Clara Johnson and Carmen Castaneda, were directly related to her disappointment of not being able to "defend herself" in a meeting regarding her past misconduct, (Dep. of Axelband at 24), the Court finds that the defendant was not required to hold such a meeting in order to "accommodate" the plaintiff. The "cause" of plaintiff's termination, as hard as this may be for the plaintiff to accept, was not discrimination due to her mental illness—a violation of the ADA—but plaintiff's own failure to recognize the acceptable limits of behavior in a clearly difficult situation for both the plaintiff and her co-workers. The Circuit Court was entitled, under law, to terminate plaintiff for the remarks that even the plaintiff has admitted making. As we previously stated, "communication made in the form of threats of violence or insubordination ... toward supervisors and coworkers ... is justification for termination." *Kahn,* 64 F.3d at 279.

In *Despears v. Milwaukee County,* 63 F.3d 635 (7th Cir.1995), the plaintiff, an alcoholic, lost his drivers' license for driving while under the influence of alcohol. The ability to drive and the possession of a valid drivers license were two of plaintiff's job requirements. When plaintiff lost his license, his employer demoted him. The district court entered summary judgment against the plaintiff, and on appeal the plaintiff argued that his alcoholism was a disability; the disability caused him to drive while under the influence; driving under the influence caused him to lose his license and losing his license caused him to be demoted. The court held that the plaintiff was not demoted because he was an alcoholic; he was demoted because he decided to drive while he was drinking. The causal link, therefore, between plaintiff's disability and the adverse employment action at issue, was not the employer's decision to demote plaintiff because he was an alcoholic (*i.e.,* discrimination due to his disability), but the plaintiff's own decision to drive under the influence and therefore lose his license. The Court of Appeals wrote:

To impose liability under the Americans with Disabilities Act ... in such circumstances would indirectly but unmistakably undermine the laws that regulate dangerous behavior. It would give alcoholics and other diseased or disabled persons a privilege to avoid some of the normal sanctions for criminal activity. It would say to an alcoholic: We know it is more difficult for you to avoid committing the crime of drunk driving than it is for healthy people, and therefore we will lighten the sanction by letting you keep your job in circumstances where anyone else who engaged in the same criminal behavior would lose it.

*Id.* at 636. *See generally Siefken v. Village of Arlington Heights,* 65 F.3d 664 (7th Cir. 1995) (summary judgment entered against diabetic who failed "to control a controllable disability"); *Roth v. Lutheran General Hospital,* 57 F.3d 1446 (7th Cir.1995) (summary judgment entered against a doctor who had a visual disability).

While plaintiff's conduct in this case was certainly not criminal *per se,* it was sanctionable by her employer. It is axiomatic that an individual who poses a "direct threat to the health or safety of other individuals in the workplace," *see* 42 U.S.C. § 12113(b), is not qualified for the position unless the employer is able to make a reasonable accommodation, *see* 42 U.S.C. § 12113(a), such as job restructuring. *See* 42 U.S.C. § 12111(9)(B); *see also* 29 C.F.R. § 1630.2(*o*). Although the Circuit Court tried to "restructure" the environment in which plaintiff worked, plaintiff's continued use of threatening statements to express herself led the defendant to conclude that plaintiff was unable to control her feelings about Ms. Johnson and Ms. Lazzaro. This inability to control her behavior, even if "[plaintiff] had no intention to do harm to anyone," (Aff. of Palmer ¶ 4), made plaintiff a "direct threat to the health and safety" of the other workers. The ADA does not require unreasonable accommodation. Thus, the Circuit Court was not required to employ plaintiff with the risk that others would be hurt by plaintiff's continued employment.

In *Gordon v. Runyon*, 1994 WL 139411, 1994 U.S.Dist. LEXIS 4959, a case involving a postal worker whose employment was terminated following abusive and threatening behavior, the court found that the employer's attempt to accommodate the worker by referring him to an Employee Assistance Program was sufficient. *Gordon*, 1994 WL 139411, at *5, 1994 U.S.Dist. LEXIS 4959, at *13–14. The court concluded, "[a]ny additional efforts to accommodate Plaintiff would cause Defendants great hardship as the Defendants could not insulate Plaintiff from co-workers or from job criticism." *Id.* The *Gordon* Court went on to state that "[r]equiring Plaintiff's continued employment with the Post Office would also unduly burden the Defendants because Defendants' employees would be exposed to a hostile and potentially threatening work environment." *Id.*, 1994 WL 139411 at *5, 1994 U.S. Dist. LEXIS 4959, at 14.

Like the Post Office in *Gordon*, this Court finds that the Circuit Court of Cook County is unable to accommodate the plaintiff's disability without compromising the safety of the defendant's workplace. Plaintiff's objectionable behavior clearly began before the April 7th and 8th phone calls. As evidenced by the previous misconduct warning and suspensions, plaintiff has exhibited inappropriate work behavior since May of 1992. (Written Warning dated May 29, 1992, Suspension letters dated August 19, 1992, September 14, 1992). Therefore, defendant had a reason for fearing that the proposed meeting with plaintiff would place its employees in a hostile and potentially dangerous situation. The ADA's requirement to make "reasonable accommodations" for the disabled in no way requires an employer to place its other employees in jeopardy. Therefore, defendant did all that was necessary to accommodate plaintiff's illness under the ADA without further endangering the security of the Circuit Court of Cook County.

### D. Adverse Employment Action Due to Disability

 Although plaintiff suffered an adverse employment action when her position with the Circuit Court of Cook County was terminated, she has failed to raise a genuine issue of material fact regarding the relation of such termination to her alleged disability. The record presents a clear case in which plaintiff was fired for her misconduct in the workplace. The documented incidents involving inappropriate conduct are an established part of the record, and plaintiff has not disputed the fact that she used threatening remarks. (Dep. of Palmer at 64).

The case law holds that an employer must be permitted to terminate its employee on account of egregious misconduct, irrespective of whether the employee is disabled. *See Little v. FBI*, 1 F.3d 255, 259 (4th Cir.1993). John Bentley, the Department Director of the Social Casework Services Department, in making the determination to terminate plaintiff's employment, stated in his affidavit that the dismissal was due to a pattern of threatening conduct. (Aff. of Bentley, Termination letter). There is a substantial amount of evidence indicating that plaintiff's termination was based on her past misconduct and plaintiff has not presented sufficient evidence to raise a genuine issue of material fact that she was dismissed due to her alleged disability. Therefore, this Court determines that summary judgment, as a matter of law, must be granted for the defendant.[12]

### CONCLUSION

Although the Court fully sympathizes with the plight of Ms. Palmer and her continued inability to work for the Circuit Court of Cook County, the time has come for her to plan her future and move beyond her unfortunate employment history with the Circuit Court of Cook County. There are many injustices in life that the law does not remedy and for which this Court cannot provide relief, no matter how sincere the people are who have suffered the alleged injury and no matter how vigorously these persons advocate their cause. Although this Court is well aware that Ms. Palmer will experience extreme disappointment with the result in this case, the Court must find, for all the reasons given in this opinion, that the totality of the

---

**12.** We note that even if plaintiff made out a prima facie case on both counts, she could not rebut the defendant's legitimate reasons for terminating her employment.

evidence presented by Ms. Palmer does not raise a genuine issue of material fact as to whether defendant discriminated against her on the basis of race or disability by terminating her employment with the Circuit Court of Cook County. Therefore, defendant's Motion for Summary Judgment is granted on all counts. The Clerk of the Court is directed to enter judgment for defendant and terminate this case. Each party is to bear their own costs. Pursuant to Fed.R.App.P. 4(a)(1), Plaintiff may appeal this decision to the Seventh Circuit Court of Appeals, within 30 days after the date this order is entered (see below) by filing an appropriate notice of appeal. *See also* Fed.R.App.P. 3(a)–(e).