**Pamela V. KOLPAS, Plaintiff,**

v.

**G.D. SEARLE & CO., Defendant.**

**No. 96 C 0456.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 20, 1997.

Patrick J. Sherlock, Chicago, IL, for Plaintiff.

Mark A. Casciari, Jeffrey Kenneth Ross, Stephanie L. Perl, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff, Pamela V. Kolpas, filed a two-count complaint against defendant, G.D. Searle & Co., alleging employment discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (Count I) and retaliatory discharge (Count II). Defendant has filed a motion for summary judgment on both counts pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion for summary judgment is GRANTED.

## STATEMENT OF FACTS [1]

Defendant hired plaintiff in October 1993 to work as its supervisor of accounts payable. Plaintiff was responsible for managing the day-to-day activities of the Accounts Payable department. Plaintiff's supervisor was Enanu Wondirad. At the time of plaintiff's hiring, Wondirad told plaintiff that she ordinarily could work forty to fifty hours per week. Plaintiff, however, was required to regularly work between sixty to seventy hours per week and more than seventy hours per week during busy times.

On June 20, 1994, plaintiff began a short-term medical leave of absence. In accordance with defendant's short-term leave policy, plaintiff received approval from defendant's Occupational Health department. Plaintiff has a medical heart condition, mitral valve prolapse, that led her to take the short-term medical leave. She was originally diagnosed with the condition in 1990. Mitral valve prolapse can cause chest pain and headaches resulting in anxiety. Because of the condition, plaintiff must monitor her intake of caffeine and cannot participate in rigorous sports. Plaintiff admits that her condition does not interfere with her ability to work or hold a job or in any of her activities. She adds, however, that she was advised by her doctor to work a normal work week.

On October 3, 1994, plaintiff wrote a letter to Donna Holley, defendant's Director of Human Resources, to request that defendant meet with her to explore possible options to reasonably accommodate her alleged disability. In the letter, plaintiff stated that three conditions needed to be met before she could return to work: (1) she was unable to work

---

**1.** The following statement of facts comes from the parties' Local Rule 12(M) and (N) statements of material facts and accompanying exhibits.

under Wondirad; (2) she was willing to be transferred to another equivalent position within defendant or an affiliate; and (3) she could only work forty hours a week as recommended by her physician, to keep stress and anxiety to a minimum. Plaintiff claims that these were just some of the many conditions that could have been met in order to accommodate her disability. In the same letter, plaintiff also listed several incidents of Wondirad's degrading and disrespectful behavior towards her which caused her stress and anxiety.

Upon receipt of plaintiff's letter, Holley searched on defendant's bulletin board, which is available to all employees, for open financial positions. Holley found two open positions in finance, Senior Consolidations Accountant and Senior Financial Analyst International. Defendant says that the two jobs required well over forty hours of work per week. In addition, both jobs were higher graded jobs than plaintiff's position so placement of plaintiff in either job would have been a promotion. On October 11, 1994, Holley spoke with plaintiff about the openings. She informed plaintiff of the two available positions and told plaintiff that both jobs required well over forty hours of work per week. According to defendant's policy, of which plaintiff was aware, when a position is posted on the bulletin board it is the employee who files an application for the position. Plaintiff did not apply for either of the two positions identified by Holley because she assumed that Holley would send her an application. Despite the fact that plaintiff never received an application, she did not request that Holley send her an application.

On October 31, 1994, plaintiff's physician, Dr. Cottrell, wrote a letter to defendant stating that defendant should take action to minimize plaintiff's stress at work and offered to discuss issues with defendant.

Pursuant to defendant's short-term medical leave policy, an employee's return to work is conditioned on defendant's receipt of a release to return to work, submitted by a physician. Absent a release, the employee is terminated by defendant's Employee Relations department. Plaintiff claims that she was only informed in a letter from defendant that when an employee reaches the end of their short-term disability eligibility period and they remain disabled, they are terminated from active employment with defendant. This letter, dated October 11, 1994, states that defendant required plaintiff to have been released by her physician in order to return to work. Plaintiff's physician would not release her back to work, plaintiff alleges, because he recommended plaintiff be transferred to a less stressful department.

On December 16, 1994, the ending date of plaintiff's short-term medical leave, she was terminated by defendant's Employee Relations department. Defendant states that plaintiff's termination was due to her not providing their Occupational Health department with a doctor's release to return to work. Plaintiff argues that the decision was made because defendant refused to reasonably accommodate her disability. Plaintiff currently works for Ralin Medical Company in their accounting department.

### STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P.56(c). In ruling on a motion for summary judgment, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

## ANALYSIS

### I. *ADA Violation (Count I)*

 Count I of plaintiff's complaint alleges that she was discriminated against in violation of the ADA on the basis of what she contends is a disability. The ADA prohibits employers from discriminating against qualified individuals with a disability because of the disability of such individual with respect to job application, hiring, advancement, discharge, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a) (1995). One type of discrimination claim can be the result of an employer not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). Such discrimination claims are examined under a reasonable accommodation analysis. *Bultemeyer v. Fort Wayne Community Sch.,* 100 F.3d 1281, 1284 (7th Cir.1996). Plaintiff must show that: (1) she was or is disabled; (2) defendant was aware of her disability; and (3) she was an otherwise qualified individual for her job. *Id.*

 The first threshold question that plaintiff must satisfy to succeed in her claim is to show that she is a disabled person as defined by the statute. The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual, or a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(2). Regulations passed to interpret the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means that the person is either unable to perform or is significantly restricted as to the manner or duration under which

that person can perform a major life activity as compared to an average individual. *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 n. 12 (7th Cir.1995). The person must be significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes. *Weiler v, Household Fin. Corp.,* 101 F.3d 519, 525 (7th Cir.1996).

 The inability to perform either a particular job for a particular employer or a narrow range of jobs is not a disability. *Roth,* 57 F.3d at 1454–55 & n. 13. The impairment must substantially limit employment generally. *Byrne v. Board of Educ., Sch. Of West Allis–West Milwaukee,* 979 F.2d 560, 565 (7th Cir.1992).[2] The court should examine if the impairment, for that person, constitutes a significant barrier to employment or if the person can perform or has procured other employment. *Id.* The definition of "major life" activity is not to be interpreted to mean "working at the specific job of one's choice." *Id.*

 Without establishing first that she is an individual with a disability protected by the ADA, plaintiff cannot succeed on her ADA claim. Plaintiff alleges that her mitral valve prolapse condition is a disability. Plaintiff, however, has not demonstrated that this condition left her impaired to the point that she was substantially limited in one or more major life activities. She states that she needs to work a normal forty-hour week to avoid stress. Such an allegation is not sufficient to constitute a disability. The inability to work more than forty-hours per week by itself does not constitute a substantial limitation on the major life activity of working. *See Duff v. Lobdell–Emery Mfg. Co.,* 926 F.Supp. 799, 808 (N.D.Ind.1996) (finding that an impairment that renders a person incapable of working more than forty hours in a week is not a disability under the ADA). The analysis of plaintiff's ability to work must focus on her general capability to function in the general work force. There

---

2. *Byrne* applied its analysis pursuant to the Rehabilitation Act of 1973. In enacting the ADA, Congress borrowed the language from the Rehabilitation Act and indicated that the case law developed under the Rehabilitation Act shall be generally applicable to the term "disability" as

employed in the ADA. *Palmer v. Circuit Ct. of Cook County, Soc. Serv. Dep't,* 905 F.Supp. 499, 506 n. 7 (N.D.Ill.1995). Indeed, case law under the Rehabilitation Act has been used broadly in interpreting the ADA. *See. e.g., Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928 (7th Cir.1995).

has been no showing that plaintiff's ability to work generally is substantially limited. Plaintiff herself admitted that the mitral valve prolapse condition does not interfere with her ability to work or hold a job. She currently works in the accounting department for another corporation. It is quite apparent that plaintiff is perfectly able to perform her accounting position with her new company and to work in general.

■ If plaintiff claims that she is disabled due to the stress imposed upon her by her supervisor, Wondirad, as is suggested in her letter to defendant, such an allegation is also insufficient to establish that she suffers a disability protected by the ADA. The ADA does not protect people from the general stresses of the workplace. *Weiler*, 101 F.3d at 524. Also, merely not being able to work for particular individuals because of stress and anxiety is also not a substantial limitation on the major life activity of working. *Id.* A disability is a part of someone that follows that person to the next job. *Palmer v. Circuit Ct. of Cook County, Soc. Serv. Dep't*, 905 F.Supp. 499, 507 (N.D.Ill.1995). Moreover, a plaintiff's inability to perform a single job does not qualify as an impairment that substantially limits him or her in a major life activity. *Id.* at 507–08. Plaintiff in this case says she cannot work under her supervisor, Wondirad. Yet if she can perform a similar job for another supervisor, she does not qualify as a disabled individual under the ADA. Plaintiff does not suffer from an impairment that substantially limits her general employment and therefore cannot support a cause of action under the ADA.

■ Furthermore, plaintiff states that defendant failed to reasonably accommodate her alleged disability. Even if this court was to find that plaintiff was disabled as defined by the ADA, plaintiff has not demonstrated that defendant did not reasonably accommodate her. Plaintiff testified that her request for reasonable accommodation was contained in her letter dated October 3, 1994. In that letter, plaintiff stated that three conditions needed to be met before she could return to work. The first condition was that she was unable to work under her supervisor, Wondirad. It is not a rea-

sonable accommodation for an employer to have to transfer an employee to a position under another supervisor. That decision remains with the employer. *Weiler*, 101 F.3d at 526. Another condition stated by plaintiff in her letter was that she could only work forty hours per week. Defendant maintains that working longer than forty hours per week was at times a necessary function of plaintiff's job. Defendant's Director of Human Resources also searched for openings in other departments. There were only two openings available and both would have been considered promotions from plaintiff's current position and required more than forty hours per week. Defendant was not obligated to promote plaintiff with an increase in salary as an accommodation. *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir.1995). Plaintiff also never applied for either position stating that defendant never sent her an application although she admits that defendant's procedure is for the employee to apply for the position. Plaintiff was never denied the opportunity to apply for these positions and she knew how the procedure worked. Plaintiff has not demonstrated what more defendant could have done. *See Weiler*, 101 F.3d at 526.

■ Moreover, even if this court was to find that plaintiff suffered from a recognizable disability, she cannot show that defendant terminated her because of her alleged disability. Defendant states that it had a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Defendant's policy is that an employee on short-term medical leave must provide a release to return to work submitted by a physician as a condition of the employee's return to work. Defendant explicitly stated in a letter to plaintiff dated October 11, 1994, that she needed to be released to return to work by her physician and failure to comply would result in termination from active employment. Plaintiff admits that she received the letter and never provided defendant with a release to return to work. Plaintiff cannot rebut the fact that she did not comply with defendant's policy. She also presents no evidence to dispute the fact that this was the reason for her termination. There been no

showing by plaintiff that defendant's reason was pretext and defendant harbored a discriminatory motive in deciding to terminate her. There is no material question of fact that defendant terminated plaintiff's employment due to the valid reason that she did not provide a physician's release to return to work and thus failed to comply with defendant's short-term medical leave policy.

After reviewing the evidence presented in the light most favorable to plaintiff, this court finds that plaintiff has not presented sufficient evidence that she qualifies as an individual with a disability covered by the ADA or sufficient evidence of discrimination by defendant to raise a genuine issue of material fact. Accordingly, defendant's motion for summary judgment on Count I is granted.

## II. *Retaliatory Discharge (Count II)*

In order for plaintiff to establish a prima facie case of retaliation, she must establish that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by defendant; and (3) there is a causal link between the protected expression and the adverse action. *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1014 (7th Cir.1997). If plaintiff is successful in demonstrating a prima facie case, the burden shifts to defendant to articulate a nondiscriminatory reason for her termination and then plaintiff bears the burden of showing that the proffered reason is pretextual and that in actuality a discriminatory motive was the determining factor behind plaintiff's termination. *Id.*

As stated above, defendant articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Plaintiff violated defendant's short-term medical leave policy by not providing a release to return to work submitted by a physician. Defendant explicitly told plaintiff that she needed to be released to return to work by her physician and failure to comply would result in termination from active employment. Plaintiff has presented no evidence to dispute the fact that her failure to comply with the policy was the reason for her termination. There has been no showing by plaintiff that defendant's reason for termination was pretext or that there was any retaliatory motive on the part of defendant. Accordingly, defendant's motion for summary judgment on Count II is granted.

## CONCLUSION

Based on the above stated reasons, defendant's motion for summary judgment is GRANTED. This case is dismissed in its entirety. All other pending motions are moot.